STATE v. W. T. MASSEY.

*Repeal or Amendment of Criminal Statute—Effect of an Offence Previously Committed—The Code, §§ 965 (6), 3766—Ch. 66, Laws 1885—Construction of Conflicting Statutes.*

1. Chapter 66, Laws 1885, amending *The Code*, § 985 (6), being without any saving clause, has the effect of discharging all who had been previously guilty of violations of said section, except those against whom an indictment could be sustained and judgment pronounced under said section without the aid of the words stricken out of it by the act of 1885.

2. *The Code*, § 3766, does not serve the purpose of a saving clause to ch. 66, Laws 1885. That section only applies where an amendatory law repeals a proviso to a section of a former act, or a whole section to a former act, and the section without the proviso, or the section not affected, will support an indictment.

3. It is more dangerous for this Court to usurp the powers of the legislative department by supplying omissions in, or putting strained constructions upon, criminal statutes, than that some criminals should go unpunished.

4. A later statute repeals, by implication, an older statute, with which it is irreconcilably inconsistent, to the extent of such repugnancy. But the two statutes must be reconciled if that can be done by any fair construction.

5. When a criminal statute, or any part of it, which is essential to sustain an indictment, is repealed or stricken out by a later act, offences committed under the older statute cannot be punished, unless a contrary intent appear from an express saving clause in the repealing statute, or by necessary implication from its wording.

(MERRIMON, J., and SMITH, C. J., dissented).

This was a CRIMINAL ACTION, tried at the Spring Term, 1889, of the Superior Court of LINCOLN County, before *Clark, J.*

The indictment was found at the Spring Term, 1888. The material portion of the first count of the indictment is as follows :

" The jurors for the State, upon oath, present : That W. T. Massey, late of Lincoln County, before the sixteenth day of February, in the year of our Lord one thousand eight hundred and eighty-five, to-wit, on the first day of April, in the year of our Lord one thousand eight hundred and eighty-four, with force and arms, at and in said county, a mill in the possession of the said W. T. Massey, *unlawfully, maliciously and feloniously* did set fire to, with intent thereby to injure and defraud the Georgia Home Insurance Company, being then and there a body corporate, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

There were several additional counts, all charging the burning to have been done at the same time and " unlawfully, maliciously," &c., but " with intent to defraud " some other corporate body. The last count contained a charge of burning a church unlawfully, maliciously, &c., found at the Fall Term, 1888. The defendant is charged in a single count with unlawfully, maliciously, &c., burning a mill, &c., " with intent to defraud the Georgia Home Insurance Company," &c.

The Solicitor admitted the fact, alleged in a plea in abatement, filed by the defendant, that the offence of burning the mill was committed, if at all, on the first day of April, 1884. Thereupon, " the Court, being of opinion that the statute in existence at the time of the offence charged, has been since repealed, and there is now no statute upon which the Court could proceed to judgment on conviction," ordered that the indictment be quashed and the defendant discharged. The Solicitor appealed.

The other material facts are stated in the opinion of the Court.

*The Attorney General,* for the State.
*Messrs. W. A. Hoke* and *W. J. Montgomery,* for the defendant.

AVERY, J. (after stating the facts). The indictment is drawn under section 985, subsection 6, of *The Code*, which provides, that "whoever shall unlawfully and maliciously set fire to any church, &c , mill, barn, &c., whether the same or any of them, respectively, shall be in the possession of the offender or of any other person or persons, body politic or corporation, shall be guilty of felony and imprisoned in the penitentiary for not less than five nor more than forty years." The act of 1885 was ratified and took effect on the sixteenth day of February, 1885, and provided that the said section—*The Code*, 985 (6)—shall be amended by striking out "unlawfully and wilfully," when it appears in the section, and inserting in lieu the words "wantonly and wilfully," and by striking out the words "with intent thereby to injure or defraud any person or persons, body politic or corporation." Chapter 66, Laws of 1885.

There are several established rules of construction that will aid us in determining whether the last statute cited leaves the section of *The Code*, under which the indictment was drawn, still in force as to offences falling under its inhibition and committed prior to the sixteenth day of February, 1885.

1. If a later statute is irreconcilably inconsistent in its terms with one previously enacted, it operates to repeal the older statute, so far as such repugnancy extends, by implication, but when any fair construction will reconcile a seeming repugnancy, it must be adopted. *State* v. *Custer*, 65 N. C., 339.

2. When a statute creating a criminal offence is expressly repealed, or any portion of it, that is essential to sustain an indictment drawn under its provisions, is stricken out by a law subsequently enacted, the former will be held inoperative even as to offences committed before the passage of the later act, unless a contrary intent on the part of the lawmakers appear from an express saving clause or by neces-

sary implication from the language in the repealing statute. *Lindsey* v. *State*, Southern Reporter, vol. 5, No. 7, p. 99; *State* v. *Long*, 78 N. C., 571 ; *State* v. *Wise*, 66 N. C., 120. " The act punished must· be criminal when judgment is demanded, and authority to render it must still reside in the Court." *State* v. *Williams*, 97 N. C., 455.   When the Legislature re-enacts, in terms or in substance, an act then in force, but declares the law previously passed repealed, it is considered a reaffirmance of the old law.   *State* v. *Sutton*, 100 N. C., 474; Bishop on Statutory Crimes, sec. 181.  In such cases the legislative intent is implied from the very words of the repealing act. Our case cannot be brought within this principle, for there is nothing in the repealing act to indicate an intent to leave the old law unrepealed or to reaffirm it.

We cannot concur with counsel, that § 3766 of *The Code* should be so construed as to subserve the purpose of a saving clause to the act of 1885.   That section is as follows: " When a part of a statute is amended it is not to be considered as having been repealed and re-enacted in the amended form ; but *the portions which are not altered* are considered as having been the law since their enactment, and the new provisions as having been enacted at the time of their amendment."   If the indictment could be sustained and judgment pronounced under § 985 (6) of *The Code*, after striking out the words " unlawfully· and maliciously," wherever they occur in said section, and also the words " with intent to defraud," &c., the defendant might be convicted and punished of this charge.   But in order to sustain that view the indictment must be good under that section, without the words stricken out on the sixteenth day of February, 1885. The indictment, however, is plainly framed upon the theory that *The Code*, § 985 (6), was still operative in the year eighteen hundred and eighty-eight as to offences committed before the ratification of the act of 1885.

It is contended, however, that the original section of *The Code* and the act of 1885 are not totally repugnant to each other, but may be construed together, leaving the former in force up to the moment of amendment, and the amended act operative since. It is alway presumed that the Legislature expresses its intention in clear and explicit terms. Potter's Dwarris, p. 219. There is nothing in the amendatory law from which we can even infer the words were to be considered as stricken out as to future offences only. We find there the simple mandate of the law-making department, that the subsection " be amended by striking out," &c. It was so amended on its ratification, when it took effect.

Where an amendatory law repeals a proviso to a section of a former act, or a whole section of a former act, but the section without the proviso or the section not affected will support an indictment, the law referred to (sec. 3766) will apply. But it is enough to show that it has no application in this case. If this Court should attempt to supply the omissions of the Legislature, and resort to strained constructions of criminal statutes in order to prevent the escape of men accused of crimes and assumed to be guilty, it might prove more dangerous to usurp the powers of a co-ordinate branch of the government than to allow some acknowledged criminals to go unpunished.

There is a marked distinction between the case at bar and *State* v. *Putney*, Phil. Law, 543, cited by the Attorney General. The defendant Putney was convicted at Fall Term, 1867, of the Superior Court of Wake County, under an indictment found in December, 1866, of the larceny of a mule. On the 25th of February, 1867, the General Assembly, after reciting " that the crime of stealing horses and mules hath of late, notwithstanding the punishment provided by law, become much more common than formerly," &c., enacted " that every person who shall steal any horse, mare, gelding or mule, and shall be thereof convicted, accord-

ing to due course of law, shall suffer death." Before that time larceny was punishable with whipping, or with fine or imprisonment. The Court held that the old and new law would be construed so as to give effect to both by interpreting "shall," according to its natural import, as referring exclusively to offences hereafter committed, and the preamble certainly indicated that intent. No law, or part of a law, was expressly, or by necessary implication, repealed; and the old and new law were both left operative. Potter's Dwarris, 133.

When, by the Constitution of 1868, corporal punishment was forbidden, the question was raised (in *State* v. *Kent*, 65 N. C., 311), whether one who was convicted of larceny, committed before the law was changed, could be punished by imprisonment in the State prison. The Court held that the law altering the punishment was not an *ex post facto* law, because it did not make punishable an act already committed and not previously criminal, and it did not aggravate the punishment of the crime of larceny, previously punishable with whipping. We think, therefore, the case is easily distinguishable from the cases of *State* v. *Sutton*, *State* v. *Kent*, and *State* v. *Putney, supra,* cited by the Attorney General.

In *State* v. *Rogers*, 94 N. C., 860, Mr. Justice MERRIMON, for this Court, says, in effect, that the act of 1885 (ch. 66) repeals the words of *The Code*, § 985 (6), that are mentioned in the act.

We think that the law under which the indictment was drawn did not continue in force in its original form up to the passage of the amendatory act, and we, therefore, concur with the Judge below in his ruling

It is not the province of this Court to pass upon the innocence or guilt of the accused. If he was not guilty, still he had the right, and it was the duty of his counsel, to have the case disposed of in this summary way. If he was guilty, under § 985 (6) of *The Code*, we must presume that the Legislature, in omitting to add a saving clause to the act of

1885, intended to discharge all who had been previously guilty of violations of the section amended.

The judgment of the Court below is affirmed.

No error.                                    Affirmed.


MERRIMON, J. (dissenting). I dissent from the opinion and judgment of the Court. It seems to me very clear that the statute (acts 1885, ch. 66) is intended to and does operate only prospectively in all respects. It in no way affects, nor was it intended to affect, offences already perpetrated at the time of its enactment; it does not in terms purport to do so, nor is there anything in it, or in it taken in connection with the general statutory provision (*The Code*, sec. 3766) that necessarily gives it such effect. That section provides that "when a part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the *amended form;* but the portions which are not altered are to be considered as having been the law since their enactment, and the *new provisions* as having been enacted at the time of the amendment." That is, the statute stands intact as unamended up to the time of the amendment, and the latter takes effect at the time of its enactment; not having any retroactive effect at all, or any such application, it speaks as amended only for that time.

The statute (*The Code*, § 985, par. 6) makes it indictable to "unlawfully and maliciously set fire to any * * * mill," &c. The amendment thereto — the statute first above cited — makes it indictable to "wantonly and wilfully set fire to any mill," &c. When? Plainly *after* the amendment of the statute. The amendment struck the words ' unlawfully and maliciously " out of it, not as of the time it was enacted or at all in contemplation of law as to offences committed before the amendment, but as, and only as, of the time of its enactment, and substituted the other words, " wantonly and wilfully," these to operate prospectively and not to have

any retroactive effect. The very purpose of these words of the general statutory provision—" and the new provision as having *been enacted at the time* of the amendment "—is to preclude the interpretation that such amendment should have retroactive effect. The purpose was not to repeal the old statute, but to amend and make it a new one, possessing different requisites, from and after the amendment. Otherwise, the words last recited, and, indeed, the whole statutory provision recited, would have no effect—would be useless and nugatory. It expressly declares, that " where a part of a statute is amended, it is not to be *considered* as having been *repealed, re-enacted* in the amended form," but the part unaffected by the amendment continues, " and the *new provisions* as having been enacted *at the* time of the amendment." " It is not to be considered as having been repealed." And why? Because it is to be considered as *intact* as to offences perpetrated before the amendment.

The interpretation I have thus given is strengthened as the correct one, in that it is not to be presumed that the Legislature intended to let crimes, committed in violation of the statute before the amendment, go unpunished, in the absence of any declaration to that effect, nor is such purpose to be allowed to appear by mere inference, especially in the face of the general statutory provision cited. The settled purpose to punish severely the perpetrators of such offences is manifest, and I cannot consent to allow guilty men (not meaning to say that the defendant is, or is not, guilty) to escape by the observance of a mere technicality, which, it seems to me, is clearly excluded, and intentionally, in the way I have indicated.

SMITH, C. J. (dissenting). I concur in the construction put upon sec. 3766 in the dissenting opinion, and its effect upon the amendatory act of 1885, in leaving offences committed before its passage exposed to criminal prosecution. It is

well settled that the repeal of a statute that creates an indictable offence withdraws the offence from the jurisdiction of the Court and the authority of the Court to pronounce judgment. To obviate this seems to be the purpose of the introduction of the terms in which it is declared that, when a part is amended, " it is not to be considered as having been repealed and re-enacted in the amended form," but the new statute, operating thereafter, shall consist of the unchanged part of the old enactment, as in force from the time of its original enactment, and of the amended portions in connection therewith. Such had been the law for a long space previous to 1868 in reference to civil actions. Section 3704, and the qualifying act of that date, embodied in sec. 3706 of *The Code,* seems to have been intended to apply a similar rule to criminal prosecutions. I think the defendant is still liable for his criminal misconduct in violating the provisions of the act of 1885, when it was in force, and that act is not abrogated in respect thereto.