JAMES A. LEAK, JR., et al. v. JOHN C. GAY et al.

*Creditor's Bill—Homestead—Mortgagor and Mortgagee—Judgment Creditors — Junior Mortgages — New Debts — Residue After Sale—The Code—Constitution—Retrospective Laws—Laws Impairing the Obligations of a Contract and Vested Rights—Amendatory Acts.*

1. The homestead interest is favored by the Constitution, and a mortgagor has a right to have his homestead exonerated by applying the proceeds of the excess above it to the payment of a prior mortgage debt in preference to other liens upon the homestead or upon his other lands.

2. No matter when the debts of the judgment creditors have been created, the debtor has a right to demand that the junior mortgages shall be satisfied out of the proceeds arising from sale of the excess above the homestead in exoneration thereof.

3. Where a homestead is sold to satisfy a debt created before the ratification of the Constitution of 1868, one thousand dollars of the proceeds of sale, if that sum is left after paying the old debt, will be treated as the homestead.

4. Where judgments are a lien upon a mortgagor's homestead in the residue left after sale, he has, as against the judgment creditors, a right to secure their ultimate payment as the Court may direct, the interest in the residue fund set apart as his homestead to be paid to him till his estate determines; or he has the option to take the present value of the homestead out of such residue, and this though it is less than one thousand dollars. The fund so taken for the present value belongs to the homesteader absolutely, and the balance left is subject to immediate division among the creditors according to priorities.

5. The Act of 1885, amendatory of the homestead law, and repealing the clause exempting homesteads from the lien of judgments, does not impair the obligations of a contract or interfere with vested rights by being allowed to operate retrospectively, so as to include judgments upon debts contracted before it became a law and while *The Code,* § 501 (4), was in operation.

6. So much of section 501 (4) of *The Code* as precedes the *proviso* must be considered as having been enacted with a view to the rule of construction contained in section 3766 of *The Code.*

7. Everybody is presumed to contract with a view to the power of the
   Legislature to alter and amend laws providing remedies.

8. *The Code*, § 3766, provides that when a part of the statute is amended,
   the new *proviso* is considered as having been enacted at the time
   of the amendment, and the Act of 1885, amendatory of *The Code*,
   is subject to this rule of construction.

This was a creditor's bill, heard before *Bynum, J.*, at
Spring Term, 1890, of RICHMOND Superior Court, on a report
of a referee and exceptions thereto relating to the disposition
of the fund arising from the sale of a debtor's land where
there were mortgagees and judgment creditors and the
debtor claimed a homestead in the fund.

DEFENDANTS' APPEAL.

The report of the Clerk was as follows:

"The undersigned respectfully reports that, in obedience
to the order made in the above entitled cause at June Term,
1887, he has passed upon the claims of all the creditors of
the defendant John C. Gay which have been presented, and
he finds the amount to be owing and now due, as shown
by the schedule hereto attached, to the parties therein named,
with the dates and credits as stated. He finds that all of
said claims are judgments or mortgages, and a lien on the
real estate of defendant John C. Gay, in Richmond County,
North Carolina, except the claim of Elias & Cohen, which is
a note of hand and has no lien.

"He further finds that the mortgage debt of the defendant
James A. Leak is a lien on the tract of 650 acres of land
described as adjoining John Ledbetter, W. F. Brookshire
and others, and that the mortgage to the defendants Leak
& Wyatt only covers the tract of 350 acres described as
adjoining H. C. Wall, Isaac Lowe and others, known as the
Baldwin or Gay place. The judgments and the mortgage
to J. A. Leak, Jr., constitute liens on both these tracts. He

further finds that the priorities of the several creditors are determined according to the dates of the registration of the mortgages and the dates of docketing the judgments respectively, all of which are stated in the schedule hereto attached.

"This the 16th day of September, 1887."

The schedule of claims against John C. Gay, as ascertained and passed upon by Z F. Long, referee, is as follows:

Mortgage of James A. Leak, Sr., for $1,250, with interest at eight per cent. from May 12th, 1881, on 650 acres of land. Mortgage registered May 13th, 1881.

Mortgage to Leak & Wyatt for $600, with interest at eight per cent. from November 1st, 1884, on 350 acres of land. Mortgage registered April 9th, 1884.

Judgment of J. Moyer for $92.88, with interest at six per cent. from February 5th, 1885, and $2.55 cost. Judgment docketed February 6th, 1885.

Judgment of Robert Ussery for $159.50, with interest on $130 from March 26th, 1885, at six per cent., and $1.30 costs. Judgment docketed March 26th, 1885.

Judgment of B. F. & H. C. Lowdermilk for $121.22, with interest from January 23d, 1886, at six per cent., and $2.15 cost. Judgment docketed January 23d, 1886.

Judgment of James A. Leak, Sr., for $102.42, with interest on $101.51 from January 23d, 1886, at eight per cent., and $3.15 cost. Docketed January 25th, 1886.

Judgment of J. S. Spencer & Co. for $229.15, with interest on $194.87 from February 13th, 1886, at six per cent., and $2.85 cost. Judgment docketed February 20th, 1886.

Mortgage of James A. Leak, Jr., on both tracts of land to secure two notes, first, $300, with interest at eight per cent. from October 1st, 1885, subject to the following credits, viz.: "Interest paid to April 1st, 1886," also "$101 75 paid January 13th, 1887." Second, for $200, with interest at six per

cent. from December 1st, 1886. Mortgage duly registered April 15th, 1886.

Judgment of Bank of New Hanover for $260.22, with interest on $250 from April 20th, 1886, at eight per cent., and $12.05 cost. Judgment docketed May 8th, 1886.

Judgment of R. T. Long for $49.32, with interest from February 10th, 1887, at six per cent., and $1 75 cost. Judgment docketed March 3d, 1887.

Judgment of James T. LeGrand for $94.31 and interest from April 30th, 1887, at eight per cent., and $2.25 cost. Judgment docketed April 30th, 1887.

Judgment of R. R. Little, surviving partner of Little & Legrand, for $121.65, with interest from August 22d, 1887, at 8 per cent., and forty-five cents cost. Judgment docketed August 24th, 1887.

Note of hand payable to Elias & Cohen for $107.91, due October 1st, 1886, with interest after maturity at eight per cent.

The defendant John C. Gay excepts to the report of the referee, Z. F. Long, as follows:

1. Because the referee has found, as a conclusion of law, that the judgments mentioned in his report are liens upon the defendant's homestead, or the lands allotted to him as a homestead. Whereas, as the debts were contracted prior to the passage of the act of 1885, and the causes of action even prior to that time, said lands are not subject to the liens of said judgments.

The referee reported as follows:

"1. It being agreed in said order that seventy years is the present age of John C. Gay, I find that the expectation of his life is eighty-five years. *The Code*, Vol. I, § 1352.

"2. That the present value of the life-estate or interest of John C. Gay in the sum of $2,602.50, the difference between the amount bid for the excess over the homestead and the amount said lands brought as a whole, is $1,015.86.

" 3. That the present value of the life-estate of the said John C. Gay in the sum of $1,000 is $390.34.

" 4. That the present value of the life-estate or interest of John C. Gay in the sum of $2,100 is $819.72.

" 5. That the present value of the life-estate or interest of John C. Gay in $1,334.35, that being the difference between the amount of the James A. Leak, Sr., debt ($2,100) and costs of this suit ($168.15), and the amount the land brought at the sale, is $520.85."

The following judgment was rendered by the Court:

" This case coming on to be heard upon the papers in the case and the motion of the parties for the distribution of the fund, and it appearing that the debts upon which the judgments were taken were contracted prior to the year 1885, and since 1877, it is now ordered and adjudged that the costs of this Court be paid by the commissioner out of the funds in his hands, including a fee of $10 to W. H. Neal, referee, and that he distribute the balance of the fund as follows:

" 1. To the payment of the mortgage debt of James A. Leak, Sr.

" 2. To the payment of the mortgage debt of James A. Leak, Jr.

" 3. That he shall pay to John C. Gay the sum of $390.34, the same being the value of the life-estate of John C. Gay in the sum of $1,000, his homestead estate or interest.

" 4. The balance he shall apply to the payment of the judgments of J. Moyer, Robert Ussery, B. F. & H. C. Lowdermilk, James A. Leak, Sr., J. S. Spencer & Co., according to the priorities of said judgments, to be ascertained by the date of docketing the same, as found by the referee."

To this judgment B. F. and H. C. Lowdermilk and J. S. Spencer & Co., judgment creditors, except, upon the following grounds—

1. Because of the payment of the second mortgage out of the funds, proceeds of the sale of lands, before their judgments, said judgments having been docketed before the registration of said mortgage.

2. Because the $390.34, the present value of defendant's homestead, should have been applied to payment of the second mortgage, and the balance of the proceeds of the sale, after deducting the first mortgage and costs of suit, to the satisfaction of the judgments docketed prior to the registration of second mortgage, according to their respective priorities, the dates of docketing.

The defendant John C. Gay excepts on the following grounds—

1. Because, after payment of the costs and the mortgages of James A. Leak, Sr., and James A. Leak, Jr., the balance should be paid to the defendant John C. Gay.

2. That no part of the funds in the hands of the commissioner should be paid to the judgment creditors named in the order of the Court distributing the fund, made at this term.

From the order and judgment rendered at this term the said B. F. and H. C. Lowdermilk and J. S. Spencer & Co., judgment creditors, appealed to the Supreme Court. The said John C. Gay also appealed.

The exceptions to judgment in this case filed in Clerk's office, in pursuance of rule of Supreme Court, are as follows:

J. S. Spencer & Co. and B. F. and H. C. Lowdermilk, judgment creditors, except to the judgment rendered by his Honor Judge Bynum, as follows:

1. For that the judgment directs the payment of the second mortgage, to-wit, the mortgage debt to James A. Leak, Jr., before the judgments of said Spencer & Co. and B. F. and H. C. Lowdermilk were paid, the said judgments having been docketed prior to the registration of said mortgage.

2. For that the judgment should have directed that the $390.34, the present value of defendant's homestead, be applied to the judgment of the second mortgage, and the balance of the proceeds of the sale, after deducting the first mortgage and costs of suit, to the satisfaction of the judgments of said Spencer & Co. and B. F. and H. C. Lowdermilk, docketed prior to the registration of the second mortgage, according to their respective priorities and dates of docketing.

3. For that the said judgment does not direct any part of the proceeds of said sale to be applied to said judgments of Spencer & Co. and Lowdermilk.

*Messrs. Little & Parsons* (by brief), for plaintiffs.
*Mr. P. D. Walker*, for defendants.

AVERY, J.—after stating the facts: All of the claimants concurred in the admission that James A. Leak, Sr., whose mortgage was executed and recorded before any other lien attached, had the right to receive his entire debt out of the fund. After discharging that claim, together with costs, the referee reported that the residue left would be $1,334.35. The contestants for it are the creditors whose judgments were docketed between the registration of the senior and junior mortgages, the junior mortgagee, James A. Leak, Jr., and the defendant John C. Gay, who claims the whole fund as proceeds of the sale of his homestead, which was allotted before the land was sold. If the defendant Gay had never executed either of the mortgage deeds, the judgment creditors—if it be conceded that they acquired any lien on the homestead at all—could have looked only to the sale of the excess over and above the land allotted for the present satisfaction of any portion of their claims. On the other hand, if he had executed only the junior mortgage, and if we admit that it was subordinate as a lien to the judgments,

still the homestead itself could have been subjected for the payment of the debt secured in the mortgage, while it would have been exempt from sale under execution issued on any of the judgments docketed before the mortgage was registered, provided always that it was executed so as to comply with the requirements of the Constitution, Art. 10, § 8, and that is admitted.

The defendant Gay insists that, it being an undisputed fact that the debts upon which all of the judgments were recovered were contracted after the passage of the Act of 1876–'77, ch. 253 (*The Code*, § 501) (4), and before the enactment of the law restoring the lien (ch. 359, Laws of 1885), it would follow that a lien was neither created in their favor by docketing them, nor attached upon the subsequent enactment of the statute (of 1885) after they were docketed, and that his homestead right should be exonerated by applying the sum of $334.35, the excess of the fund over $1,000, to the payment of the debt of the junior mortgagee, James A. Leak, Jr.; and, after satisfying the residue of his debt, the remainder of the $1,000—about $800 in round numbers— should be paid over to him in lieu of his homestead. If there is sufficient ground to support this contention, his appeal must be sustained.

It has been held that the homestead interest is one favored by the Constitution, and hence a mortgagor has a right to demand that it be exonerated and discharged from incumbrance by applying the fund realized from the sale of the excess to the payment of the mortgage debt in preference to other claimants who have liens either upon the land in which the homestead is allotted or upon other lands of the debtor. It must be conceded, no matter when the debts of the judgment creditors were created, that, in a case like the present, the debtor has the right to demand that the junior mortgage shall be satisfied out of the excess of the fund over $1,000, so as to exonerate his homestead. *Butler* v. *Stainback,*

87 N. C., 216; *Curlee* v. *Thomas*, 74 N. C., 51. But the claim of the junior mortgagee exhausts the excess, as it amounts to more than $500, and leaves $200 of it still unsatisfied.

Were we to concede that when a homestead has been once allotted as prescribed by law, it cannot be reassigned by metes and bounds at the instance of a creditor, the debtor may, nevertheless, sell or incumber that interest, by observing the requirements of the Constitution, Art. 10, § 8. Where, in order to satisfy a mortgage or a debt created before the ratification of the Constitution of 1868, the debtor's homestead is sold, in apportioning the fund arising from such sale the sum of $1,000 of the money must be treated as the homestead of the debtor, notwithstanding the fact that the whole of the debtor's land, including excess and homestead, sold for over $2,000 more than the sum offered by bidders for the excess when exposed separately to sale.

In *Wilson* v. *Patton*, 87 N. C., 318, where the whole of the debtor's land was sold under execution issuing upon an old debt, the sum of $1,000 of the proceeds of sale was treated as the homestead, as against new debts contracted since the ratification of the Constitution of 1868.

If we admit that the judgment creditors had a lien upon the land allotted as a homestead, still, in a contest between them and the defendant Gay, he had the option to secure the ultimate payment to them, in such manner as the Judge might direct, of the residue left to represent the homestead, after paying the junior mortgagee, and thereby secure to the beneficiaries under the homestead allotment the use of, or interest on, that sum (supposed to be about $800), till the time fixed for the enjoyment of the homestead should have expired, or, if he preferred to do so, he had the right to demand the payment to him of the present value (calculated according to our table) of his life-estate in $1,000 (not $800), which value the referee reported to be $390. The defendant Gay chose to take the present value instead of the use of the

whole sum, but insisted upon his right to receive the whole residue absolutely and unconditionally.

As we have stated, although the allotment of the homestead may preclude all question as to its real value, yet, when the occupant subjects it, in the mode prescribed by the Constitution to the lien of a mortgage, and ultimately to sale under its provisions, $1,000 in money, if it sell for more than that sum, must represent and be treated as the homestead itself, and will be so secured and invested that the "homesteader," or his family, can enjoy the interest so long as the right of enjoyment subsists, and his creditors can ultimately divide it according to priorities.  But if the debtor elect to take the full present value of the right to enjoy the interest on the fund in future, the effect must be to render necessary an adjustment of rights between him and his creditors immediately upon the exercise of his option, so as to allow them also to receive the present value of their right, by a payment of the residue of the fund representing the homestead (left after deducting its value, ascertained by a calculation based upon the life-tables) to them according to priorities, instead of awaiting the determination of the right of enjoyment of the homestead by the beneficiaries, and then dividing the whole fund representing it in the same way.

The disposition of the fund in dispute must depend, then, upon the question whether the act of 1885 operated retrospectively so as to give to the judgment creditors, from its passage, a lien upon the debtor's homestead.  The judgment creditors contracted with a view, it is true, to the statute [*The Code*, § 501 (4)] which exempted the homestead from the lien of judgments, but both creditor and debtor are presumed to have known that the Legislature might exercise its power, as it did, in passing the act of 1885 (ch. 359) by taking from the latter the privilege of exemption enjoyed by him while it was permitted by the law-making power.

If the amendatory statute (ch. 359, Laws 1885) neither falls within the constitutional inhibition as a law impairing the obligation of a contract, nor interferes with a vested right of the debtor in its application to the contracts made while the act of 1876–'77 was in force, then it would follow, if it appeared clearly to have been the legislative intent to restore to pre-existing creditors the judgment lien in cases where it had been taken away by the latter act, that the Courts must construe the law so as to carry out such manifest purpose, and declare that the homestead of the defendant Gay became subject to the liens of the plaintiffs who had judgments, according to priorities, upon the passage of the amendatory act. A statute may be, according to its express terms, retroactive in its operation, and yet not necessarily void. The Legislature is prohibited from enacting any law in conflict with the Constitution of the United States, or of the State of North Carolina. The restrictive inhibitions of the organic law, State and Federal, that are usually invoked to test the validity of a statute as to any retrospective operation proposed to be given to it, are those against passing laws impairing the obligation of a contract; *ex post facto* laws, are those that provide for taking private property for public use, even without compensation. *Satterbee* v. *Matthewson*, 2 Peters, 380   When the effect of a law is to divest the vested right of property, except for the use of the public, and then only after providing for payment of its value, it will be declared void   But it is the creditor alone who has the right to insist that any law passed by the Legislature of a State which will, if enforced, diminish the value of his debt, take away his remedy without providing another equally as efficacious, or destroy his lien, is unconstitutional, because it impairs the obligation of the contract.

Statutory privileges and exemptions, as distinguished from those conferred by the Constitution, are granted, subject to the power of the General Assembly to repeal or

modify the act that gives them, and all private agreements are entered into, in contemplation of law, with full knowledge that such privileges or exemptions may be recalled when not resting in contract. Cooley's Cont. Lim., star p. 383; *Bull* v. *Conroe*, 13 Wis., 238; *Moore* v. *Litchford*, 35 Texas, 185; *Harris* v. *Glenn*, 56 Ga., 94; *Sparger* v. *Campton*, 54 Ga., 185; *Balton* v. *Johns*, 5 Penn. St., 145; *Blakeney* v. *Bank*, 17 Seargt. & Rowls (Penn.), 64.

The Legislature has the power to enact retroactive laws also, in order to add to the means of enforcing existing contracts. 1 Kent's Com., 455.

A creditor has the constitutional right to demand that his lien shall not be destroyed, or his remedy in any other way impaired, but the debtor can claim no vested right of exemption. The privilege is granted to the latter subject to the right of the sovereign to recall it in the way prescribed in the organic law. *Harris* v. *Glenn, supra; Blakeney* v. *Bank, supra.* If, by giving to a statute a retroactive operation, it would divest any right of property that had already accrued, it should be construed to operate prospectively only, if at all. Sedgwick on Stat. & Con. L. P., 195

Upon the idea that the public good is to be considered paramount to private interests, and upon the principle that private persons act and contract with reference to the power of the Legislature and the risk of its exercise, it has been frequently held by this and other Courts of this country that a retrospective law, making valid unauthorized acts of officers, may be upheld and enforced, though the effect of enforcing it be to enable persons to establish rights to property, that they could not otherwise have maintained. *Belo* v. *Commissioners*, 76 N. C., 489.

*The Code,* § 501 (4), as amended by the Act of 1885 (ch. 359), is as follows: "The property, real and personal, specified in subdivision 3 of this section, and the homestead of any resident of this State, shall not be subject to sale under

execution, or other process, except such as may be rendered or issued to secure the payment of obligations contracted for the purchase of the said real estate, or for laborers' or mechanics' liens, for work done and performed for the claimant of said homestead, or for lawful taxes, provided the statute of limitations shall not run against any payment owing by the owner of the homestead or homestead interest during the existence of such homestead or homestead interest, whether the same has been, or shall hereafter be, allowed, assigned and set apart under execution, or otherwise." *The Code*, § 3766, is as follows: "Where a part of a statute is amended it is not to be considered as having been repealed and re-enacted in the amended form, but the portions which are not altered are to be considered as having been the law since their enactment, and the new proviso as having been enacted at the time of the amendment." By the amendatory act, the words "to the lien of any judgment or decree of any Court or" were stricken out between the word "subject" and the words "to sale," and the words following after the word "provided" were added to the section. So much of the section, in its amended form, as precedes the proviso must be considered as enacted with a view to the rule of construction contained in section 3766, and must be "considered as having been the law," since it was enacted at the session of 1876–'77. Since it does not interfere with vested rights or impair the obligation of any contract, to give the present law the retroactive effect contemplated and required by the provisions of *The Code*, we must construe it just as though the clause destroying the lien of judgments as to homesteads had never been inserted in the original act, or re-enacted as a part of *The Code* in November, 1883. However widely the text-writers and the Courts may differ as to the true rule for testing the question whether a given statute, not objectionable on the ground of unconstitutionality, shall be allowed to operate retroactive'y, all concur

that when there is a plain expression of the legislative intent, the law is to take effect accordingly. *State* v. *Littlefield*, 93 N. C., 614; Potter's Dwarris, 162, note 9; Bishop on Written Law, § 82; 1 Minor's Ins., 26. The act of 1885 must be considered just as though section 3766 of *The Code* had constituted an additional proviso to it, and both must be construed together. *State* v. *Massey*, 103 N. C., 356; *ibid*, 97 N. C., 465. If any further argument is needed to arrive at the true interpretation to be given to the present law, it will be observed that the proviso to the act which, under section 3766, alone took effect on the day of its enactment, or related to that day, discloses the purpose of the Legislature by suspending the statute as to homestead already assigned, or to be allotted thereafter, to make the act apply to both. The result reached by the opinion of the Court in *Utley* v. *Jones*, 92 N. C., 263, must have been substantially the same as to the disposition of the fund in controversy, if a reference had been made to ascertain the present value of the debtor's life-estate in one thousand dollars. But the Court failed to advert to the two facts that there was on the one hand no objection growing out of the constitutionality of the act of 1885 giving it a retrospective effect, and, on the other, there was, in *The Code*, a mandatory requirement to so construe it. There was, therefore, no error pointed out by the defendant Gay. Judgment in defendant's appeal must be affirmed.

Affirmed.