STATE OF NORTH CAROLINA v. JAMEL SHERROD, DEFENDANT

No. COA07-1071

(Filed 5 August 2008)

**Probation and Parole— revocation—possession of explosive device—firearm ammunition**

The trial court erred by revoking defendant's probation for being in possession of an explosive device because: (1) firearm ammunition alone, absent a means to discharge it, is not an explosive device under N.C.G.S. § 15A-1343(b)(5); and (2) the term "explosive device" under N.C.G.S. § 15A-1343(b)(5) includes only those objects which may reasonably be interpreted as weapons in and of themselves.

Appeal by defendant from judgment dated 6 March 2007 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 4 March 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas M. Woodward, for the State.*

*Michelle FormyDuval Lynch for defendant-appellant.*

BRYANT, Judge.

Jamel Sherrod (defendant) appeals from a judgment revoking his probation for being in possession of an "explosive device." Because we hold that firearm ammunition alone is not an "explosive device" as connoted in North Carolina General Statute 15A-1343(b)(5), we reverse defendant's conviction.

*Facts*

Defendant pled guilty to possessing cocaine with intent to sell or deliver on 11 December 2006 and was given a suspended sentence of ten to twelve months on condition that he satisfy the terms of his probation for thirty-six months. As a special condition, defendant was sentenced to the Intensive Supervision Program, and he informed the probation office of his temporary residence at his uncle's house in Fremont, North Carolina.

On 22 January 2007, six weeks after defendant's conviction, Probation Officer Merwyn Smith conducted an unannounced curfew

check at the Fremont location. Upon pulling his car into the driveway, Officer Smith watched defendant leave the doorway and close the door behind him on his way inside the house. Officer Smith knocked on the door asking to speak to defendant, but was greeted only by having the door slammed in his face twice. Officer Smith contacted the sheriff's department regarding defendant's suspicious behavior, and a decision was made to conduct a warrantless search pursuant to the special terms of defendant's probation.

Two sheriff's deputies arrived at the residence to assist, and defendant led them to his bedroom. In his drawer chest, a grocery bag was discovered containing .45 caliber hollow point bullets, a separate box of bullets missing several rounds, and a high capacity gun magazine containing about twenty-five nine millimeter bullets.

No firearms were found in defendant's living area, but a further search revealed a shotgun in the hall closet. Defendant's uncle claimed ownership, and no other firearms were found on the premises. Officer Smith filed a violation report the same day, and alleged defendant had breached a regular condition of his probation requiring him to "[p]ossess no firearm, explosive device or other deadly weapon."

A hearing was held on 5 and 6 March 2007 regarding the allegations of the report, and the trial court found that defendant was in constructive possession of an "explosive device" in violation of the regular terms of his probation. Judgment was announced in open court on 6 March 2007, and notice of appeal was given thereafter.

Defendant raises two assignments of error on appeal: (I) whether the trial court abused its discretion in revoking defendant's probation by finding him in possession of an "explosive device" when no evidence was offered to support a finding that a bullet is an "explosive device"; and, (II) whether the trial court erred in convicting defendant of a probation violation for possessing an "explosive device" when insufficient written findings were made to support such a conclusion. Because we hold that firearm ammunition, by itself, does not qualify as an "explosive device" as a matter of law under the first assignment of error, we need not address defendant's second assignment of error.

*Standard of Review*

Findings made in support of revoking probation must be supported by competent evidence, and will not be disturbed on appeal

without a showing that the trial court committed a "manifest abuse of discretion." *State v. Guffey*, 253 N.C. 43, 45, 116 S.E.2d 148, 150 (1960). Alleged violations of probationary conditions need not be proven beyond a reasonable doubt, rather, the evidence need only be sufficient to reasonably satisfy the judge in the exercise of his sound discretion that a valid condition of the suspended sentence has been violated. *State v. Tennant*, 141 N.C. App. 524, 526, 540 S.E.2d 807, 808 (2000). Probation will only be revoked if the State satisfies its burden of proof to show that defendant either willfully violated a term of probation or violated a condition without lawful excuse. *State v. Lucas*, 58 N.C. App. 141, 145, 292 S.E.2d 747, 750 (1982).

*I*

This appeal illustrates the balance between the trial court's obligation to punish a defendant's abuse of the grace extended to him and a defendant's right to rely on the terms of his probation. *State v. Hewett*, 270 N.C. 348, 352-53, 154 S.E.2d 476, 479 (1967). In this case, irrespective of defendant's actions, the abuse alleged does not rise to the level of a probation violation within the terms of the agreement between defendant and the State.

Our examination must begin by noting that the General Assembly has not defined "explosive device" within Chapter 15A, and other definitions of "explosive device" within our code are limited such that they do not apply to N.C.G.S. § 15A-1343. *See* N.C. Gen. Stat. § 14-50.1 (2007) (definition of "explosive or incendiary device or material" limited to Art. 13 of Ch. 14); N.C. Gen. Stat. § 14-72(b)(3) (2007) (separate definition of the term "explosive or incendiary device or substance" limited to section); N.C. Gen. Stat. § 14-288.20(a)(3) (2007) (term "explosive or incendiary device" limited to section). Therefore, absent a definition, it is unclear whether firearm ammunition of the type seized in this case qualifies as an "explosive device" under the regular term of probation contained in N.C.G.S. § 15A-1343(b)(5). As a result, our analysis of legislative intent will be guided by principles of statutory construction set forth by our North Carolina Supreme Court. *In re Banks*, 295 N.C. 236, 239-40, 244 S.E.2d 386, 389 (1978).

*A. Statutory Construction*

"If the language of the statute is ambiguous or lacks precision, or is fairly susceptible of two or more meanings, the intended sense of it may be sought by the aid of all pertinent and admissible considerations." *Abernethy v. Commissioners*, 169 N.C. 631, 636, 86 S.E. 577,

580 (1915). Proper considerations include "the law as it existed at the time of its enactment, the public policy of the State as declared in judicial opinions and legislative acts, the public interest, and the purpose of the act." *Kendall v. Stafford*, 178 N.C. 461, 469, 101 S.E. 15, 16 (1919).

Regarding criminal statutes in particular, our Supreme Court has held that the purpose of a statute will not:

> be extended by implication so as to embrace cases not clearly within its meaning. If there be reasonable doubt arising as to whether the acts charged to have been done, are within its meaning, the party of whom the penalty is demanded is *entitled to the benefit of that doubt. . . . [I]t must always be taken that penalties are imposed by the legislative authority only by clear and explicit enactments.* That is, the purpose to impose the penalty must clearly appear. Such enactments . . . must be construed strictly together, but as well . . . in the light of reason.

*Hines & Battle v. Wilmington & W. R. Co.*, 95 N.C. 434, 438 (1886) (emphasis added). Moreover, statutes should be sensibly rather than liberally construed, and their meaning kept within the limits of what the words themselves allow. *Grocery Co. v. R. R.*, 170 N.C. 241, 243, 87 S.E. 57, 58 (1915). Because of these constrictions, where the existence of an omission by the legislature facilitates the exoneration of accused individuals, it is not the role of this Court to supply a remedy by "resort[ing] to strained constructions of criminal statutes." *State v. Massey*, 103 N.C. 356, 360, 9 S.E. 632, 633 (1889).

### B. History of the Regular Conditions of Probation

The House Committee on Courts and Administration of Justice (the Committee) first considered the contents of what later became the current form of N.C.G.S. § 15A-1343(b)(5) in 1983. H. COMM. ON COURTS AND ADMIN. OF JUSTICE, Meeting Minutes at 1 (N.C. Apr. 12, 1983)[Meeting]. House Bill 455, otherwise titled "An Act to Establish Uniform Regular and Special Conditions of Probation," was proposed as part of a comprehensive effort by the Courts Commission (the Commission) to increase consistency, efficiency, and predictability in the North Carolina court system. REPORT OF THE COURTS COMM. TO THE N.C. GEN. ASSEMBLY (1983). Among other reforms, the purpose of the legislation was to provide to the trial court a set of regular conditions to be routinely imposed and a set of special conditions to be discretionarily imposed. *Id.* at 29.

One of the regular conditions proposed by the Commission and adopted into the first draft of H.B. 455 specified:

> [a]s [a] regular condition[] of probation, a defendant must: . . . (6) [p]ossess no firearm, destructive device or other dangerous weapon without the written permission of the court.

REPORT, *supra*, at App. K. At a meeting held on 12 April 1983, the Committee sent this condition along with the rest of H.B. 455 to the University of North Carolina Institute of Government (the IOG)[1] for further study. Meeting, *supra*, at 2.

On 25 April 1983, the IOG sent its recommendations back to the Committee, and proposed that the regular condition in issue be revised to state that defendant must "[p]ossess no firearm, explosive device or other deadly weapon listed in G.S. 14-269 without the written permission of the court." Memorandum from Jim Drennan, Institute of Government, to Robert Hunter, N.C. House Representative (Apr. 25, 1983) (on file with the Legislative Library of the N.C. General Assembly). In explaining why the language of this particular condition was changed, the IOG stated plainly: "[t]he regular condition prohibiting *possession of weapons* is rewritten to provide greater clarity[.]" *Id.* at 1 (emphasis added).

In May 1983, the IOG's version of H.B. 455 was adopted in its entirety by the Committee. H. COMM. ON COURTS AND ADMIN. OF JUSTICE, Meeting Minutes at 1 (N.C. May 3, 1983). Thereafter, the bill successfully navigated the labyrinth of the legislative process while retaining the exact language of the weapons provision proposed by the IOG, which remains the language at issue in this case. *See* N.C. Gen. Stat. § 15A-1343(b)(5) (2007).

### C. Analysis

While the characterizations of the IOG, the Commission, and the Committee are hardly dispostive or binding on this Court, their comments nevertheless provide much needed historical context to the creation of N.C.G.S. § 15A-1343(b)(5). Specifically, it may reasonably be explicated from the legislative history that, from its inception to codification, the section in question was not meant to

---

1. The Institute of Government, established in 1931 to provide support to North Carolina's state and local governments, became part of the University of North Carolina in 1942, and was subsumed into the U.N.C. School of Government in 2001. The 75th Anniversary of the School of Government. http://www.sog.unc.edu/75/index.htm.

include anything outside the category of "weapons." While we realize that reasonable minds may infer the section to include only "deadly weapons" in light of the surrounding terms "firearm" and "other deadly weapon listed in G.S. 14-269," we choose to apply a lower threshold for this analysis.

As apparent from the language proposed by the IOG, the purpose of N.C.G.S. § 15A-1343(b)(5) was not to include every type of weapon capable of creating some risk of harm. To the contrary, the language was narrowed to provide greater specificity as to what types of weapons would provoke the trial court's intervention in response to a probationer's offense. Accordingly, we similarly limit the term "explosive device" to include only those objects which may reasonably be interpreted as a "weapon" in and of themselves.

The term "weapon" is also not defined in Chapter 15A, and is subject to different interpretations within our statutes as well. *Cf.* N.C. Gen. Stat. § 14-269.2(a)(4) (2007) (bullets excluded from enumerated list of weapons); N.C. Gen. Stat. § 14-315(a) (2007) ("pistol cartridge" listed as weapon if sold to minor). However, "weapon" is generally defined as either "[a]n instrument of attack or defense in combat, as a gun or sword," *The American Heritage Dictionary* 1528 (3d ed. 1997), or "an instrument of offensive or defensive combat[;] something to fight with[;] something (as a club, sword, gun, or grenade) used in destroying, defeating, or physically injuring an enemy." *Webster's Third New International Dictionary Unabridged* 2589 (1993). Therefore, we conclude that firearm ammunition, absent a means to discharge it, does not qualify as a "weapon." Applying this limitation to N.C.G.S. § 15A-1343(b)(5), we similarly conclude that bullets in themselves are not included within the term "explosive device."

In this case, neither the history nor the actual language of N.C.G.S. § 15A-1343(b)(5) require us to include bullets within the definition of "explosive device," and it is not the role of this Court to contemplate creative scenarios by which firearm ammunition alone may somehow be used as a "weapon" within these definitions. *Massey*, 103 N.C. at 360, 9 S.E. at 633. Rather, we are bound by precedent to sensibly construe terms to remain within their meaning, and to resolve ambiguity in criminal statutes in favor of the defendant. *Grocery Co.*, 170 N.C. at 243, 87 S.E. at 58; *Hines & Battle*, 95 N.C. at 438.

Defendant argues that firearm ammunition does not qualify as an "explosive device" as the term is defined in North Carolina General

Statutes sections 14-50.1,[2] 14-72,[3] and 14-288.20.[4] Though perhaps this is a tempting approach to the issue, the General Assembly has nevertheless limited the scope of these definitions to their respective articles and sections. Because our holding is able to rest on the statute at issue, we decline to apply these sections outside the ambit of their stated purpose.

Based on the foregoing, we hold firearm ammunition does not qualify as an "explosive device" under N.C.G.S. § 15A-1343(b)(5), and conclude that the trial court erred in finding defendant in possession of an "explosive device" and revoking his probation as a result. Accordingly, the judgment is reversed.

REVERSED.

Judges WYNN and JACKSON concur.

———————————

2. " '[E]xplosive or incendiary device or material' means nitroglycerine, dynamite, gunpowder, other high explosive, incendiary bomb or grenade, . . . or any other destructive incendiary or explosive device . . . used for destructive explosive or incendiary purposes against persons or property, when . . . some probability [exists] that such instrument . . . will be so used[.]" N.C.G.S. § 14-50.1.

3. " '[E]xplosive or incendiary device or substance' shall include any explosive or incendiary grenade or bomb; any dynamite, blasting powder, nitroglycerin, TNT, or other high explosive; or any device, . . . or quantity of substance primarily useful for large-scale destruction of property[.]" N.C.G.S. § 14-72(b)(3).

4. " '[E]xplosive or incendiary device' means (i) dynamite and all other forms of high explosives, (ii) any explosive bomb, grenade, missile, or similar device, and (iii) any incendiary bomb or grenade, fire bomb, or similar device[.]" N.C.G.S. § 14-288.20(a)(3).