STATE v. HENRY DOWDEN.

*Murder in First and Second Degrees—Premeditation.*

1.  The killing with a deadly weapon raises a presumption of murder in the second degree, under Ch. 85, Laws 1893.

2.  Weighing the purpose to kill long enough to form a fixed design, and the putting of such design into execution at a future period, no matter how long deferred, constitutes premeditation and deliberation sufficient to sustain a conviction of murder in the first degree.    But where the intent to kill is formed simultaneously with the act of killing, the homicide is not murder in the first degree.

STATE v. DOWDEN.

INDICTMENT FOR MURDER, tried before *Meares, J.*, at the February Term, 1896, of the Circuit Criminal Court of HALIFAX County.

The prisoner was indicted for the murder of M. M. Dodd, a locomotive engineer of the Seaboard Air Line, at Weldon, N. C., on the 22d February, 1896.

The prisoner was found guilty of murder in the first degree, and the judgment of the court was duly prayed, and the prisoner was sentenced by the court to be hanged on the 17th day of March, A. D. 1896. The prisoner introduced no testimony and no exceptions were taken on the trial to any of the rulings of the court, and no prayers for instructions were offered or asked for by the prisoner's counsel.

The portion of the charge discussed in the opinion is as follows: " When one human being kills another, the law calls it ' homicide.' There are various degrees of homicide, viz., murder, manslaughter, justifiable and excusable homicide; and the degree of the homicide must be determined by the attending circumstances. The highest and most heinous form or degree of homicide is that of murder. When a person of sound mind kills another human being with malice aforethought, either expressed or implied, it is a case of murder. You will bear in mind that malice is an essential ingredient of the crime of murder. There can be no murder where the killing is unaccompanied by malice. [The court here fully explained the difference between expressed malice and implied malice.] Where a homicide has been committed, and the accused is indicted and charged with the crime of murder, and the accused, on his trial, admits the killing, or the State fixes the killing upon the accused beyond a reasonable doubt, then the burden shifts from the prosecution to the accused, of showing what is the degree of homicide—whether it be a case of murder or

STATE *v.* DOWDEN.

of manslaughter, or justifiable or excusable homicide ; that is to say, it devolves upon the accused to show such mitigating circumstances attending the killing, if there be any, as will reduce the degree of homicide from murder to manslaughter, or to justifiable or excusable homicide.    But in doing so the accused is allowed to avail himself of all of the testimony introduced upon the trial of the case, as well that which has been introduced by the State as that which has been introduced by himself; and if neither the testimony introduced on the trial by the accused, nor that introduced by the State, will show any mitigating circumstances attending the killing, then it is a case of murder."

The facts connected with the killing are contained in the testimony of Peter Neilson, who testified : That he was a locomotive fireman in the employment of the Seaboard Air Line, and that he worked and ran upon the same engine that the deceased, M. M. Dodd, who was an engineer, was in charge of at the time he was killed ; that the hour of departure for his train was at 4:35 o'clock a. m. ; that at 4:20 o'clock on the morning of the 22d February last, the engine of which the deceased had charge, and on which the witness belonged as fireman, together with the train to which it was attached, was standing under the railroad shed at Weldon, and the Atlanta Special train, which had just arrived, was standing alongside of his train ;. it was yet before daybreak.   At that time the prisoner came upon the engine to warm, the witness being at work on the cab of the engine.   The witness said nothing to the prisoner at first, but allowed him to warm for a few minutes, and then the witness told the prisoner to get off. In a few moments witness observed that the prisoner had taken his seat, whereupon he said to the prisoner, " Damn it, get off; I have no time to fool with you."    Just at that time M. M. Dodd, the deceased, who had been down upon

the ground oiling the engine, came up on the engine and told the prisoner, in a peaceable and quiet manner, to get off, and then took hold of the prisoner's coat-sleeve and led him four feet to the getting-off place on the side of the engine, and the prisoner went down upon the ground. The prisoner made no resistance whatever and said nothing, and the deceased was not mad, and the prisoner not mad, apparently; and there was no quarrel between them. The prisoner, in a moment after getting off the engine, said: " Hello! Mister, I have dropped my hat; I want your light." Then the deceased turned to that side of the engine where the prisoner was standing and held the light, and said to the prisoner: " There is your hat, pick it up and go off," and then the deceased turned from where he was holding the light and stepped back on his side of the cab, and was raising his hand to take hold of the injector when the pistol fired. The deceased exclaimed, " Oh! " and jumped through the engine window—was speechless and died in a few minutes. It was probably ten or fifteen seconds from the time the deceased took hold of prisoner's coat-sleeve and led him to the place to get off and the firing of the pistol; witness was not looking at the man at the time the pistol was fired—his back was turned towards him at that moment. When the prisoner came up on the engine, the witness took him to be a tramp; and while the prisoner was warming, in the light of the fire, the witness observed that the prisoner was wearing a gold watch-chain, with a charm fastened to the chain, and the charm was a pitcher; and the prisoner also had a red handkerchief around his neck, and wore a hat with a hole in it. When the deceased was shot and fell to the ground, the witness immediately ran to the telegraph office, a few yards distant, and gave the same description of the man, who fired the pistol and killed the deceased, as he had given here;

and in fifteen or twenty minutes afterwards the prisoner was arrested, and he then had on his person the watch with the chain and charm, and the red handkerchief around his neck, and the hat and coat, just as the witness had described him to the telegraph operator a few minutes before. The witness swore most positively to the identification of the prisoner as the person who came upon the engine, as before described by him, and who fired the pistol and killed the deceased, in the manner described by him. He swore that he entertained not the slightest doubt about it; that when the prisoner was arrested he denied that he had any pistol, and that he was immediately searched and they found a pistol hanging on the inside of a leg of the prisoner's pants, considerably lower down than the pocket. That when the deceased took hold of the prisoner's coat-sleeve and told him to get off, the witness remarked that this place was worse for tramps than Chicago. The prisoner appeared to be sober. The watch and chain, with the charm attached to it, were introduced as evidence and identified as the same referred to by the witness, and which were taken from the person of the prisoner at the time of his arrest.

Charles Bland, a State's witness, testified : That he had been acquainted with the prisoner for three or four years in Raleigh. Witness is a porter on the Atlanta Special train. He saw the prisoner on the train at Bolling, six miles from Weldon, the morning Mr. M. M. Dodd was killed. When the train reached Weldon, the prisoner was riding on the steps of the car. He saw the prisoner get off the steps of the car and go up on Mr. Dodd's engine. In a few moments afterwards witness heard a pistol shot, and came out of the car where he was, and saw the deceased lying on the ground.

There was other testimony corroborative of the witnesses whose testimony is given above.

*The Attorney General* and *MacRae & Day*, for the State.

*Messrs. Argo & Snow*, for defendant.

AVERY, J.: Counsel for the prisoner contended that the charge of the court came within the condemnation of the ruling in *State* v. *Fuller*, 114 N. C., 885, in that the definition of murder in the first degree was left in doubt and uncertainty, and the jury were liable to be misled by inconsistent propositions of law contained in different portions of it.

It is probable that the instruction would have been more clearly understood by the jury had the judge told them, in the outset, that the killing, (which, according to all of the testimony, was done with a deadly weapon,) being proved or admitted, the law presumed malice, and the burden is shifted upon the prisoner to show that he was not guilty of *murder in the second degree.* The instruction that the burden shifted upon the prisoner to rebut the presumption that he was guilty of murder, without specifying the grade, is not to be commended as a formula, and, without the clear explanation subsequently given, would have been misleading. The distinction between the instruction excepted to in this case and that held to be erroneous in *Fuller's* case can be easily drawn and readily comprehended. In *Fuller's* case the trial judge told the jury that where the fact of killing with a deadly weapon was proved. or admitted, premeditation might "be presumed from the use of the deadly weapon unless the contrary appeared." Other instruction given was in conflict with that proposition, and the jury were left to act upon either of two irreconcilably antagonistic views of the law, one of which might have misled them into returning a verdict of murder in the first degree, when the facts found

by them warranted only a verdict of murder in the second
degree, while the other proposition submitted by the court,
if acted upon, would have led them to a just conclusion.
The prisoner was entitled to a new trial, because it was
manifest that the jury might have found him guilty of the
higher crime, solely because they were misled as to the
law. In the case before us the judge told the jury that
the burden shifted, upon proof of killing with a deadly
weapon, as to the question whether the homicide was mur-
der or was mitigated to manslaughter, or was only a justi-
fiable or excusable slaying. Subsequently, however, and
after defining manslaughter, the judge stated that there
were two degrees of murder, and explained the distinction
between the two as follows:

"The crime of murder has been graded by the law of
this State into murder in the first degree and murder in
the second degree.

"Every murder which is committed by lying in wait or
poisoning or by torture, or any other kind of willful, delib-
erate and premeditated murder, or any murder committed
in the attempt to commit a felony or in the perpetration
of a felony, is deemed to be a murder in the first degree.
All other kinds of murder are in the second degree. You
will understand that it is an essential ingredient of the
crime of murder in the first degree that the killing must
be done with deliberation and premeditation. When there
is no premeditation in the commission of the murder, for
that very reason it is murder in the second degree. What
does the law mean by the word premeditation? The word
premeditate means to think beforehand—as where a
man thinks about the commission of an act and concludes
or determines in his mind to commit the act; he has thus
premeditated the commission of the act. The law does
not lay down any rule as to the time which must elapse

between the moment when a person premeditates, or comes to the determination in his own mind to kill another person, and the moment when he does the killing, as a test. It is not a question of time.  It is merely a question of whether the accused formed in his own mind the determination to kill the deceased, and then at some subsequent period, either immediate or remote, does carry his previously formed determination into effect by killing the deceased.   If there be an intent to kill and a simultaneous killing, then there is no premeditation.   In determining this question of deliberation and premeditation, it is competent for the jury to take into their consideration the conduct of the prisoner, before and after as well as at the time of the homicide, and all the circumstances connected with the homicide.

" It is for the jury, and not the court, to decide what is the degree of murder in all cases where the jury have come to the conclusion that the case under consideration is one of murder.   Our Act of Assembly grading the crime of murder also makes it the duty of the jury which tries and sits upon the case to determine, if it be a case of murder, whether it be murder in the first or second degree.

" The court also instructs you that when the State contends for and asks at your hands for a verdict of guilty of murder in the first degree, as the State does in this case, the law makes it incumbent upon the State to satisfy the jury beyond a reasonable doubt that this is a case not only of murder but of murder in the first degree."

The first part of the charge left the question of what was included under the term "murder" an open one, and if that and the latter portion of it had been given, one immediately after the other, there would have been no inconsistency between them.   The killing with a deadly weapon did raise a presumption that the homicide was

murder—but in the second degree. The specific instruction subsequently left no room for doubt in the mind of an intelligent juror that it was incumbent on the State to prove premeditation and deliberation, and that on the failure to do so the prisoner could be found guilty of no higher offence than murder in the second degree.

If the prisoner weighed the purpose of killing long enough to form a fixed design to kill, and at a subsequent time, no matter how soon or how remote, put it into execution, there was sufficient premeditation and deliberation to warrant the jury in finding him guilty of murder in the first degree. State v. Thomas, at this Term; State v. Norwood, 115 N. C., 790; State v. Covington, 117 N. C., 834; State v. McCormac, 116 N. C., 1033. This Court has not followed the intimations of some of the courts of other states that, in order to constitute deliberation, there must be evidence of a definite design formed on some occasion previous to the meeting at which the killing was done, and cherished up to and at the time of putting it into execution.

The court properly told the jury that where the intent to kill was formed simultaneously with the act of killing the homicide was not murder in the first degree. This was but another mode of expressing the rule that there must be a preconceived and definite purpose to kill, the question of the time that elapses between the determination to kill and the killing being immaterial. There was no error, and the judgment is affirmed.

Affirmed.