STATE v. BARRETT.

(Filed September 18, 1906).

*Severance—Homicide—Murder in First Degree—Pre-meditation.*

1. Defendants indicted in a joint bill for an offense have no legal right to a separate trial. The granting of such a motion is a matter within the sound discretion of the trial Judge, which is unreviewable.

2. In an indictment for murder, where it appears that about sunset of the day of the homicide a serious affray occurred, in which the prisoner participated; that a warrant was issued for his arrest; that the prisoner armed himself after the affray, and that the deceased, an officer, and his posse, met the prisoner; and the deceased, with a warrant in his possession, told the prisoner that he had a warrant for his arrest and to consider himself under arrest, and that immediately, without inquiry, the prisoner shot the officer, who had presented no weapon, nor attempted to seize the prisoner: *Held*, that there was sufficient evidence of premeditation.

3. Where the prisoner weighs the purpose to kill long enough to form a fixed design, and then puts it into execution, it is murder in the first degree. But where the intent to kill is formed simultaneously with the act of killing, the homicide is not murder in the first degree.

INDICTMENT for murder, against Sylvester Barrett, heard by *Judge B. F. Long* and a jury, at the January Term, 1906, of the Superior Court of PITT.

Prisoners Sylvester Barrett and Jerry Cobb were convicted of the murder of Walter Lovett; Barrett in the first degree and Cobb in the second degree. From the judgment and sentence of death, prisoner Barrett appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*F. C. Harding* and *Julius Brown* for the prisoner.

BROWN, J. The evidence tends to show that the homicide occurred near Farmville in the county of Pitt, some time

between 10 and 11 o'clock on the night of 20 January, 1906. The deceased was constable in Farmville Township and had a warrant for several parties, including the prisoners, for an affray which occurred about sunset on 20 January, near Farmville, the circumstances of which are substantially as follows: One J. C. Case left Farmville in a wagon accompanied by three others, and about one mile out of Farmville these parties overtook a crowd on the road. The prisoners, Cobb and Barrett, were among the number. Case said, "Get out of the road, boys," and they replied in profane language. An altercation ensued, during which the prisoner Cobb, after having first approached the wagon "with a knife or some kind of a blade in his hand," wrested from Case a shovel with which he assaulted Smith, one of the parties in the wagon, and broke his arm. The prisoner Barrett was present when this difficulty occurred. Upon complaint of Smith immediately made, a justice of the peace issued a warrant for the parties, including the prisoners, Cobb and Barrett. The warrant was placed in the hands of the deceased, Walter Lovett, the constable for Farmville Township. Several parties were summoned to aid in the arrest. Some of these parties went to Cobb's house and also to Barrett's, but did not find the prisoners at home. The homicide occurred near the house of one Watt Parker. Dr. Joyner and Lovett, the father of the deceased, were in a buggy, and Walter Lovett, the deceased, was standing on the rear axle. Dr. Joyner testified that when they were within about 20 yards of Parker's house he saw two persons in front of the house. Lovett, the deceased, said: "Halt, we have a warrant for you; consider yourselves under arrest." As the deceased stepped down, a gun fired.

There was abundant evidence tending to prove that the shot was fired by Barrett, or that at the moment he was present aiding and abetting Cobb. If evidence tends to prove anything, the uncontradicted evidence in this case tends to

prove that the death of Lovett was brought about by the joint act of Barrett and Cobb. Upon the trial the prisoners moved for a severance. His Honor, after hearing the motion, declined to grant it, and the prisoner excepted. We find nothing in the record to take this case out of the rule, repeatedly laid down, that defendants indicted in a joint bill for an offense have no legal right to a separate trial. The granting of such a motion is a matter within the sound discretion of the trial Judge. His discretion is unreviewable. *State v. Smith,* 24 N. C., 402; *State v. Collins,* 70 N. C., 241.

We note in examining the record of the trial that the Judge below carefully separated the evidence bearing upon the guilt of each prisoner and instructed the jury as to what was competent and incompetent against each. It also appears that the Judge explained to the jury that the declarations made by Cobb were admitted, and should be considered only as against Cobb and not against Barrett, and so limited the argument.

We think that the only real question of importance presented is, whether there is sufficient evidence of premeditation to justify the Court in submitting to the jury an aspect of murder in the first degree. About sundown on 20 January an affray occurred in which Cobb and Barrett participated; it was serious in its results. A warrant was issued for the prisoners, and they must have known the constable and his posse were in search. They were not at home, but were on the highway in the immediate neighborhood of where the difficulty, at sunset, occurred. The evidence tends to show that Barrett had armed himself after the affray. The constable and his party met the prisoners. Lovett, the deceased, with a warrant in his possession, ordered the prisoners to halt, and as Lovett stepped down off the axle of the buggy, the fatal shot was fired without a moment's warning. The very precipitancy of the act tends to prove that the prisoners were expecting arrest and had determined to resist it in the

manner they did, by taking the life of the officer. The rule laid down in this State is that where the prisoner weighs the purpose to kill long enough to form a fixed design and then puts it into execution, it is murder in the first degree. But where the intent to kill is formed simultaneously with the act of killing, the homicide is not murder in the first degree. *State v. Dowden,* 118 N. C., 1153, and cases cited.

Tested by the rule laid down in other States, that the definite design to kill must have been formed on some occasion previous to the meeting of the prisoner and the deceased when the killing took place, and that it must have been cherished up to and at the time of putting it into execution, the evidence justifies the verdict of the jury.

It is evident that the prisoner expected arrest after the affray with Case; that the prisoner, shortly after, armed himself with his gun, with the intent to resist at all hazards. The constable, Lovett, had presented no weapon at the prisoner nor even attempted to seize him. He had told the prisoner simply that he had a warrant for him and to consider himself under arrest. Immediately, without inquiry or parley, the prisoner shot him down. This could scarcely have been the result of other than a premeditated purpose to kill to prevent arrest. The acts and conduct of the prisoner, after the affray with Case, display thought, preparation and the design to kill if arrested. *State v. Daniel,* 139 N. C., 549.

No Error.