STATE OF NORTH CAROLINA v. MECO TARNELL WIGGINS

No. COA10-450

(Filed 1 March 2011)

**1. Firearms and Other Weapons— possession by felon—guns obtained and possessed simultaneously—single possession conviction**

The trial court erred by denying defendant's motion to dismiss two of three counts of possession of a firearm by a convicted felon where defendant obtained and possessed simultaneously two firearms used during the murder of one victim and assaults upon two other victims. N.C.G.S. § 14-415.1(a) does not authorize multiple convictions of and sentences for possession of a firearm by a convicted felon predicated on evidence that the defendant simultaneously obtained and possessed one or more firearms which he used during the commission of multiple substantive criminal offenses.

**2. Homicide— jury instructions—first-degree murder—lesser-included offense—second-degree murder—no plain error**

The trial court did not commit plain error in a first-degree murder trial by failing to submit the issue of defendant's guilt of the lesser-included offense of second-degree murder to the jury. The evidence concerning defendant's behavior immediately prior to the shooting of the victim clearly supported a finding of premeditation and deliberation and did not support an inference that defendant formed the intent to kill the victim at the same time that he shot him.

Appeal by defendant from judgments entered 17 September 2009 by Judge Kenneth F. Crow in Lenoir County Superior Court. Heard in the Court of Appeals 13 October 2010.

*Attorney General Roy Cooper, by Steven M. Arbogast, Special Deputy Attorney General, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for Defendant.*

ERVIN, Judge.

Defendant Meco Tarnell Wiggins appeals from judgments sentencing him to life imprisonment without the possibility of parole based upon

his conviction for first-degree murder in connection with the death of James Walls; a term of sixteen to twenty months imprisonment based on his conviction for possession of a firearm by a convicted felon at the time of Mr. Walls' murder; a term of thirty-four to fifty months imprisonment based upon his conviction for assaulting Ray-Shawna Waters with a deadly weapon inflicting serious injury; to a term of sixteen to twenty months imprisonment based upon his conviction for possession of a firearm by a convicted felon at the time of the assault on Ms. Waters; a term of 116 to 149 months imprisonment for assaulting Shannon Hinton with a deadly weapon with the intent to kill inflicting serious injury; and a term of sixteen to twenty months imprisonment based upon his conviction for possession of a firearm by a convicted felon at the time of the assault on Mr. Hinton, with all sentences to be served consecutively in the custody of the North Carolina Department of Correction. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that (1), as far as his convictions for homicide and the two assaults are concerned, Defendant received a fair trial that was free from prejudicial error and is not entitled to relief on appeal and (2), as far as his convictions for possession of a firearm by a felon are concerned, the evidence supports a finding that Defendant committed only one, rather than three, firearm possession offenses, so that two of his three firearm possession convictions should be overturned.

## I. Factual Background

### A. Substantive Facts

The charges against Defendant arise from three shootings that occurred in Kinston, North Carolina, between approximately 2:00 a.m. and 4:00 a.m. on 4 September 2006. The victim in the first of these three assaults was Shannon Hinton, a casual acquaintance of Defendant's. At a time when Mr. Hinton and Defendant were in front of an apartment located at 812 Williams Street, Mr. Hinton's friend, Treyvon,[1] approached, handed Defendant two firearms, and walked away. Mr. Hinton was not alarmed by this development, since he was accustomed to being in the presence of armed individuals and since he had not had any prior conflict or argument with Defendant.

After a brief conversation, Defendant asked Mr. Hinton for a cigarette. As Mr. Hinton honored Defendant's request, Defendant

---

1. Mr. Hinton testified that he did not know Treyvon's last name.

STATE v. WIGGINS

[210 N.C. App. 128 (2011)]

"pulled out a gun . . . fired and shot [Mr. Hinton,] then pulled out another gun and was shooting [Mr. Hinton] with both guns." Defendant shot Mr. Hinton multiple times, injuring his wrist, thigh, and genitals before "walk[ing] up the street."

At 1:55 a.m., Lenoir County emergency services received a 911 call reporting that a shooting had occurred at 812 Williams Street. As a result of that call and the subsequent response, Mr. Hinton was taken to a local hospital and then airlifted to Pitt Memorial Hospital in Greenville, North Carolina, where he received medical treatment for a week and a half. At 812 Williams Street, investigating officers found four .380 caliber shells and a 9 millimeter shell, which they turned over to the State Bureau of Investigation for testing.

The second assault occurred at a Jamaican restaurant on Queen Street. Ray-Shawna Waters was at the restaurant with friends when Defendant entered, carrying a twenty dollar bill. A friend of Ms. Waters' named Jatrice Hardaway "snatched the [twenty dollar bill] out of his hand and said, 'Meco, you going to let me have it?' " After mistakenly concluding that Ms. Waters had taken his money, Defendant quarreled with Ms. Waters for several minutes before lifting his shirt and "pull[ing] out two guns." At that point, Defendant called Ms. Waters a "b_ch" and shot her "with the [gun] in his right hand." Following the shooting, Defendant picked up the bag of food he had ordered from the restaurant and walked out.

At 3:37 a.m., Lenoir County emergency services received a 911 call reporting the shooting of Ms. Waters. After initially being treated at Lenoir Memorial Hospital, Ms. Waters was transferred to Pitt Memorial Hospital, where she was treated for a severe fracture to her left femur that necessitated surgery and required a significant recovery period. Investigating officers found two .380 caliber shells at the scene and gave them to the State Bureau of Investigation for testing.

The third shooting occurred on East Washington Street just before 4:00 a.m. Rodney Hill and a friend, James Walls, were sitting on the steps of a house when Defendant approached. Mr. Hill had known Defendant for "at least ten years" and greeted him with a hug. After the two began talking, Defendant mentioned that there had been a shooting at the Jamaican restaurant. In the course of their conversation, Mr. Hill heard Defendant tell Mr. Walls, who was standing nearby, that "[y]ou better give my boy another five dollars," a statement which Mr. Hill interpreted as a reference to an earlier offer by the mother of one of Defendant's friends to sell Mr. Walls a wrist

watch. In addition, Mr. Hill heard Defendant say "I make my money off hits." At that point, Defendant asked Mr. Hill for a cigarette. As Mr. Hill handed him a cigarette, Defendant "slid back in the alley" and "tried to give [Mr. Hill] the cigarette back." As he did so, Mr. Hill saw Defendant pull out two guns and start shooting, causing Mr. Walls to fall to the ground while saying that he had been hit. Defendant left the area following the shooting of Mr. Walls.

At 3:57 a.m., Lenoir County emergency services received a 911 report relating to the shooting of Mr. Walls. Mr. Walls was taken to the hospital, where he died several hours later. Dr. Joseph Pestaner, a regional medical examiner, determined that Mr. Walls' death resulted from injuries to his heart and lungs stemming from a gunshot wound to his back. At the scene of the shooting, investigating officers found a 9 millimeter shell, which was delivered to the State Bureau of Investigation for testing.

The three shootings occurred within a few minutes' drive of each other. The shell casings found at the scenes of the three shootings were tested by State Bureau of Investigation firearms examiner Beth Starosta-Desmond, who was allowed to testify as an expert in forensic firearms investigation. Special Agent Starosta-Desmond testified that, in her expert opinion, the 9 millimeter shell casings found at the Williams Street and East Washington Street crime scenes were fired from the same firearm and the .380 caliber shells found at the Williams Street and Queen Street crime scenes were fired from the same firearm. Thus, the shells found at the three locations in question were all fired from one or the other of the same two firearms.

### B. Procedural History

Warrants for arrest charging Defendant with assaulting Ms. Waters with a deadly weapon with the intent to kill inflicting serious injury and with the first degree murder of Mr. Walls were issued on 4 September 2006 and 6 September 2006, respectively. On 9 January 2008, the Lenoir County grand jury returned bills of indictment charging Defendant with the first degree murder of Mr. Walls and assaulting Ms. Waters with a deadly weapon with the intent to kill inflicting serious injury. On 29 September 2008, the Lenoir County grand jury returned three indictments charging Defendant with possession of a firearm by a convicted felon, with each charge associated with one of the three assaults that Defendant allegedly committed. On 14 July 2009, the Lenoir County grand jury returned a superseding indictment charging

Defendant with assaulting Mr. Hinton with a deadly weapon with the intent to kill inflicting serious injury.[2]

The cases against Defendant came on for trial before the trial court and a jury at the 14 September 2009 criminal session of the Lenoir County Superior Court. On 17 September 2009, the jury returned verdicts convicting Defendant of the first degree murder of Mr. Walls, assaulting Mr. Hinton with a deadly weapon with intent to kill inflicting serious injury, assaulting Ms. Waters with a deadly weapon inflicting serious injury, and three counts of possession of a firearm by a convicted felon. At the ensuing sentencing hearing; the trial court found that Defendant had accumulated six prior record points and should be sentenced as a Level III offender and that Defendant should be imprisoned in the custody of the North Carolina Department of Correction for a term of life imprisonment without the possibility of parole for the first degree murder of Mr. Walls, for a term of sixteen to twenty months imprisonment for possession of a firearm by a convicted felon at the time of the murder of Mr. Walls, to a term of thirty-four to fifty months imprisonment for assaulting Ms. Waters with a deadly weapon inflicting serious injury, to a term of sixteen to twenty months imprisonment for possession of a firearm by a convicted felon at the time of the assault on Ms. Waters, to a term of 116 to 149 months imprisonment for assaulting Mr. Hinton with a deadly weapon with intent to kill inflicting serious injury, and to a term of sixteen to twenty months imprisonment for possession of a firearm by a convicted felon at the time of the assault on Mr. Hinton, all to be served consecutively. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Legal Analysis

### A. Possession of a Firearm by a Convicted Felon

[1] First, Defendant argues that the trial court erred by denying his motion to dismiss two of the three counts of possession of a firearm by a convicted felon on the grounds that the record only supports one, rather than three, firearm possession convictions. After carefully reviewing the record evidence and the applicable law, we conclude that Defendant's argument has merit.

N.C. Gen. Stat. § 14-415.1(a) (2009) provides, in pertinent part, that "[i]t shall be unlawful for any person who has been convicted of

---

2. The record does not include the original indictment charging Defendant with this offense.

a felony to purchase, own, possess, or have in his custody, care, or control any firearm." "Thus, the State need only prove two elements to establish the crime of possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Wood*, 185 N.C. App. 227, 235, 647 S.E.2d 679, 686, *disc. review denied*, 361 N.C. 703, 655 S.E.2d 402 (2007). Although Defendant does not challenge the sufficiency of the evidence to show that, during the early morning of 4 September 2006, he possessed two firearms after having previously been convicted of a felony, he contends that, given the undisputed evidence tending to show that he obtained and possessed the two firearms used during the murder of Mr. Walls and the assaults upon Mr. Hinton and Ms. Waters simultaneously, he can lawfully be convicted of only one charge of possession of a firearm by a convicted felon rather than three.

At bottom, the issue before the Court in this case hinges upon the meaning of the relevant statutory language rather than upon the import of the evidence received at trial, which is essentially undisputed. In other words, in order to adequately address Defendant's contention, we have to determine whether the statutory expression "purchase, own, possess, or have in his custody, care, or control" as used in N.C. Gen. Stat. § 14-415.1(a) allows multiple convictions and sentences for possessing the same simultaneously-acquired firearms because they were used to commit multiple substantive offenses during the same transaction or series of transactions. Thus, the issue that Defendant has presented for our consideration is essentially one of statutory construction.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998)). "The best indicia of that intent are the language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). "In construing a criminal statute, the presumption is against multiple punishments in the absence of a contrary intent." *State v. Boykin*, 78 N.C. App. 572, 576-77, 337 S.E.2d 678, 681 (1985). Similarly, "[t]he rule of lenity 'forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *Id.*, 78 N.C. App. at 577, 337 S.E.2d at 681. Since the literal language of N.C. Gen. Stat. § 14-415.1 does not explicitly address the extent to which a convicted felon can be separately convicted and sentenced

for felonious possession of a firearm each time he or she uses that weapon to commit a separate substantive offense, we must resolve this issue using general principles of statutory construction such as those cited above.

A few years ago, this Court held that:

> a review of the applicable firearms statute shows no indication that the North Carolina Legislature intended for N.C. Gen. Stat. §14-415.1(a) to impose multiple penalties for a defendant's simultaneous possession of multiple firearms. . . . [W]e hold that defendant should be convicted and sentenced only once for possession of a firearm by a felon based on his simultaneous possession of both firearms.

*State v. Garris*, 191 N.C. App. 276, 285, 663 S.E.2d 340, 348, *disc. rev. denied*, 362 N.C. 684, 670 S.E.2d 907 (2008). *See also State v. Whitaker*, —— N.C. App. ——, ——, 689 S.E.2d 395, 405-06 (2009), *aff'd*, 364 N.C. 404, 700 S.E.2d 215 (2010) (reversing ten of eleven convictions for possession of a firearm by a convicted felon where defendant possessed all eleven firearms simultaneously). As a result, the holding of *Garris* is that simultaneous possession of two firearms suffices to support only a single conviction for possession of a firearm by a convicted felon rather than multiple convictions. This case, however, involves a slightly different factual scenario than the one at issue in *Garris*, since the convictions at issue in *Garris* stemmed from the defendant's simultaneous possession of multiple firearms, while the convictions at issue here stem from Defendant's use of firearms that he simultaneously obtained and used while committing three substantive offenses over a period of approximately two hours. However, we believe the same logic utilized in *Garris* is clearly applicable to this case, leading us to conclude that, since simultaneous possession of more than one firearm supports only one conviction for possession of a firearm by a convicted felon, the fact that Defendant may have fired those weapons, which were obtained and possessed simultaneously, on more than one occasion during the commission of several substantive crimes does not support multiple possession-based convictions and sentences.

*In Garris*, we stated that:

> The United States Supreme Court holds that ambiguity in the statute should be resolved in favor of lenity, and doubt must be resolved against turning a single transaction into multiple offenses.

*Garris*, 191 N.C. App. at 283-84, 663 S.E.2d at 347 (citing *Bell v. United States*, 349 U.S. 81, 83-84, 99 L. Ed. 905, 910-11, 75 S. Ct. 620, 622 (1955). As we have already noted, the literal language of N.C. Gen. Stat. § 14-415.1 does not address the extent to which multiple convictions and sentences are appropriate under circumstances such as those at issue here. Given the absence of any indication in the relevant statutory language that the usual presumption against multiple punishments does not apply in cases such as this one, we conclude that the rule of lenity is applicable in situations such as the one we have before us in this case and that, after applying the rule of lenity to the facts disclosed in the present record, we are compelled to conclude that N.C. Gen. Stat. § 14-415.1(a) does not authorize multiple convictions of and sentences for possession of a firearm by a convicted felon predicated on evidence that the defendant simultaneously obtained and possessed one or more firearms, which he used during the commission of multiple substantive criminal offenses. Any other result would be tantamount to presuming that the General Assembly intended to authorize multiple punishments in such instances despite the absence of any language supporting such a result.

Although the State argues that *Garris* holds that "N.C. Gen. Stat. § 14-415.1(a) does not intend to impose multiple penalties for a defendant's simultaneous possession of multiple firearms resulting from a single incident or occurrence," we are not persuaded by the logic upon which the State relies. A careful review of our opinion in *Garris* indicates that we said nothing on that occasion concerning the appropriateness of separate possession-based liability stemming from incidents, occurrences, or other crimes involving the use of such simultaneously-possessed firearms. Simply put, nothing in *Garris* in any way suggests that the extent to which a defendant uses a firearm to commit substantive offenses in any way supports a separate conviction and sentence for unlawful firearm possession arising from each occasion on which a convicted felon uses a firearm to commit another substantive offense. Taken to its logical extreme, the reasoning upon which the State relies would convert N.C. Gen. Stat. § 14-415.1(a) into a device for enhancing each sentence imposed upon a convicted felon who committed multiple substantive offenses using a firearm based solely on unlawful weapon possession, a result which finds no support in the relevant statutory language. As a result, we do not believe that *Garris* in any way supports a determination that Defendant was properly convicted of and sentenced for separate possession-based offenses in this case.

In addition, none of the cases cited in the State's brief construing various federal firearms possession statutes provide any support for a decision to uphold Defendant's multiple possession-based convictions and sentences given the facts of this case. For example, in *United States v. Bullock*, 615 F.2d 1082, 1083, 1086 (5th Cir. 1980), *cert. denied*, 449 U.S. 957, 66 L. Ed. 2d 223, 101 S. Ct. 367 (1980), the Fifth Circuit held that a defendant could be separately convicted and sentenced for possessing "several firearms" that he took "from a cabinet" in his residence and a .357 magnum pistol that "he took from under the seat of [his] truck" "[d]uring [a] trip back to [a] shopping center" given that the relevant statutory provision "allows the government to treat each of several firearms not simultaneously received or possessed as separate units of prosecution." Similarly, in *United States v. Mullins*, 698 F.2d 686, 687-88 (4th Cir. 1983), *cert. denied*, 460 U.S. 1073, 75 L. Ed. 2d 952, 103 S. Ct. 1531 (1983), the Fourth Circuit upheld separate convictions and sentences for unlawful firearm possession given that the evidence supported an inference that one weapon "was used principally to provide armed protection . . . at the Axton establishment, while [the other weapon] was used to provide armed protection . . . in [the] principal establishment" on the theory that the record showed a "disparate course of dealing with the two weapons." Neither *Bullock* nor *Mullins* addresses the issue of whether a defendant can be convicted of multiple possession-based offenses in the event that simultaneously-acquired firearms are used to commit a series of substantive offenses over a relatively limited period of time; instead, those decisions focus on the issue of whether the defendant obtained the weapons in question separately and stored them at different locations. Using essentially the same logic, the Sixth Circuit held in *U.S. v. Adams*, 214 F.3d 724, 726-27, 728 (6th Cir. 2000), that separate convictions and sentences were appropriate as the result of the defendants' possession of a Ruger 9 millimeter handgun found on 12 September 1996 "at the right rear tire" of a vehicle obtained in a 3 September 1996 carjacking, a Bryco 9 millimeter handgun used during the course of a 5 September 1996 robbery at the time of the defendants' 25 September 1996 arrest, and a .380 Smith and Wesson handgun found "at the spot where [one of the defendants] had jumped out of the pickup truck" on 7 September 1997 following their escape from custody on the grounds that each firearm "was discovered by the police on separate occasions and in different places." Once again, the use of the firearms in question to commit different crimes does not appear to have factored into the Sixth Circuit's analysis in *Adams. See also: United States v. Gibson*,

808 F.2d 1011, 1012 (3rd Cir. 1987) (holding that separate convictions and sentences for unlawful firearms possession were appropriate when the defendant possessed two shotguns on 13 July 1982 and a semi-automatic pistol on 28 July 1982 since "courts have uniformly upheld multiple prosecution[s]" in cases involving firearms that "had been acquired or received at different times"); *United States v. Filipponio*, 702 F.2d 664, 665 (7th Cir. 1983) (holding that a defendant could be separately convicted and sentenced for possessing a Colt firearm on 8 July 1981 and a Beretta firearm on 10 July 1981 given the absence of "evidence or argument that [the defendant possessed both firearms" at the same time). As a result, although the relevant federal decisions clearly hold that the possession of multiple firearms at different times constitutes more than one offense, *U.S. v. Dunford*, 148 F.3d 385, 390 (4th Cir. 1998), none of the federal decisions upon which the State relies hold that the use of simultaneously-acquired firearms to commit a series of shootings supports a separate possession-based conviction and sentence associated with the commission of each substantive offense.

The conclusion that we believe to be appropriate is also consistent with established North Carolina law, which provides that the use of a single firearm or, for that matter, multiple firearms possessed simultaneously, may support multiple homicide, robbery, or assault charges arising from the use of that firearm. For example, a defendant may properly be convicted of separate counts of armed robbery in the event that he or she uses a firearm to rob several different people. *State v. Johnson*, 23 N.C. App. 52, 56, 208 S.E.2d 206, 209, *cert. denied*, 286 N.C. 339, 210 S.E.2d 59 (1974) (stating that "defendants threatened the use of force on separate victims and took property from each of them . . . . The armed robbery of each person is a separate and distinct offense, for which defendants may be prosecuted and punished."). In essence, a defendant who uses one or more firearms to commit multiple substantive offenses during the course of the same transaction or series of transactions may be separately convicted and sentenced for each of those substantive offenses. Thus, the sanction to be imposed upon Defendant as a result of his decision to commit multiple felonies using a firearm stems from the fact that he committed multiple substantive offenses rather than from the fact that he unlawfully possessed a firearm at the time that each substantive offense was committed.

As a result, we conclude that Defendant's possession of a firearm during the sequence of events that included the murder of Mr. Walls

and the assaults upon Mr. Hinton and Ms. Waters constituted a single possessory offense rather than three separate possessory offenses. The extent to which Defendant is guilty of single or multiple offenses hinges upon the extent to which the weapons in question were acquired and possessed at different times. The undisputed evidence presented at trial clearly establishes that the weapons at issue here came into Defendant's possession simultaneously and were utilized over the course of a two hour period within a relatively limited part of Kinston in connection with the commission of a series of similar offenses. In light of that set of facts, we conclude that the trial court properly entered judgment against Defendant based upon his conviction for possession of a firearm by a convicted felon in File No. 08 CRS 2527. However, we also conclude that the two possession-based judgments entered by the trial court in File Nos. 08 CRS 2525 and 2526 should be reversed and that, since the trial court imposed consecutive sentences in all three possession-based cases, this case should be remanded to the Lenoir County Superior Court for the entry of new judgments that are not inconsistent with our holding concerning this issue.

## B. Failure to Instruct on Second Degree Murder

[2] Secondly, Defendant argues that the trial court committed plain error by failing to submit the issue of his guilt of the lesser included offense of second degree murder to the jury in the case in which he was convicted of murdering Mr. Walls. According to Defendant, the evidence contained in the record developed at trial revealed the existence of a legitimate dispute as to whether Defendant acted with premeditation and deliberation at the time that he shot Mr. Walls. Defendant's arguments to this effect lack merit.

"Where, under the bill of indictment, it is permissible to convict defendant of a lesser degree of the crime charged, and there is evidence to support a milder verdict, defendant is entitled to have the different permissible verdicts arising on the evidence presented to the jury under proper instructions . . . . This principle applies, however, only in those cases where there is evidence of guilt of the lesser degree. If all the evidence tends to show that the crime charged in the indictment was committed, and there is no evidence tending to show commission of a crime of less degree, the principle does not apply and the court correctly refuses to charge on the unsupported lesser degree." *State v. Wrenn,* 279 N.C. 676, 681, 185 S.E.2d 129, 132 (1971)

(citing *State v. Smith*, 201 N.C. 494, 160 S.E. 577 (1931), and *State v. Duboise*, 279 N.C. 73, 181 S.E.2d 393 (1971) (other citations omitted).

Although Defendant argues that the record evidence would have permitted a jury to determine that he was only guilty of second degree murder in connection with the shooting of Mr. Walls, "[d]efense counsel did not request an instruction from the trial court on the lesser included offense of second-degree murder, therefore we review this error under a plain error analysis." *State v. Bass*, 190 N.C. App. 339, 345, 660 S.E.2d 123, 127 (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)), *cert. denied and appeal dismissed*, 362 N.C. 683, 670 S.E.2d 566 (2008).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or . . . where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)). Therefore, "[t]o prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *State v. Jones*, 137 N.C. App. 221, 226, 527 S.E.2d 700, 704 (citing *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)), *disc. review denied and appeal dismissed*, 352 N.C. 153, 544 S.E.2d 235 (2000).

"The well-established rule for submission of second-degree murder as a lesser-included offense of first-degree murder is:

> "If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder." The evidence must be sufficient to allow a rational jury to find the defendant guilty of the lesser offense and to acquit him of the greater.

*State v. Locklear,* 363 N.C. 438, 454-55, 681 S.E.2d 293, 306 (2009) (quoting *State v. Strickland,* 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds by State v. Johnson,* 317 N.C. 193, 203-04, 344 S.E.2d 775, 781-82 (1986), and citing *State v. Conaway,* 339 N.C. 487, 514, 453 S.E.2d 824, 841 (quoting *Beck v. Alabama,* 447 U.S. 625, 635, 65 L. Ed. 2d 392, 401, 100 S. Ct. 2382, 2388 (1980)), *cert. denied,* 516 U.S. 884, 133 L. Ed. 2d 153, 116 S. Ct. 223 (1995)).

"The elements of first-degree murder are: (1) the unlawful killing, (2) of another human being, (3) with malice, and (4) with premeditation and deliberation. *See* N.C. [Gen. Stat]. § 14-17 (1999)." *State v. Coble,* 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) (citing *State v. Watson,* 338 N.C. 168, 176, 449 S.E.2d 694, 699 (1994), *cert. denied,* 514 U.S. 1071, 131 L. Ed. 2d 569, 115 S. Ct. 1708 (1995), *overruled in part on other grounds by State v. Richardson,* 341 N .C. 585, 461 S.E.2d 724 (1995), and *State v. Bonney,* 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991)). "We note that the difference between murder in the first degree and murder in the second degree is that premeditation and deliberation are essential elements of only murder in the first degree." *State v. Griffin,* 308 N.C. 303, 313, 302 S.E.2d 447, 455 (1983) (citing *State v. Meadows,* 272 N.C. 327, 331, 158 S.E.2d 638, 641 (1968)). On appeal, Defendant does not deny that the State presented sufficient evidence to support the submission of the issue of his guilt of first degree murder to the jury. Instead, he argues that the record evidence would have permitted the jury to find him guilty of second degree murder based on a lack of premeditation and deliberation.

"Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Conner,* 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994) (citing *State v. Myers,* 299 N.C. 671, 263 S.E.2d 768 (1980), and *State v. Hamlet,* 312 N.C. 162, 321 S.E.2d 837 (1984)). "Premeditation and deliberation can be inferred from many circumstances, some of which include:

"(1) absence of provocation on the part of deceased, (2) the statements and conduct of the defendant before and after the killing,

(3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds."

*State v. Leazer*, 353 N.C. 234, 238, 539 S.E.2d 922, 925 (2000) (quoting *State v. Sierra*, 335 N.C. 753, 758, 440 S.E.2d 791, 794 (1994)).

In arguing that the trial court should have instructed the jury to consider the issue of his guilt of second degree murder, Defendant cites *State v. Barrett*, 142 N.C. 565, 54 S.E. 856 (1906), and *State v. Dowden*, 118 N.C. 1145, 24 S.E. 722 (1896), for the proposition that, "[i]f the killing took place simultaneously with the formation of the intent to kill, there would be no premeditation." *State v. Evans*, 198 N.C. 82, 84, 150 S.E. 678, 679 (1929) (citing *State v. Steele*, 190 N.C. 506, 130 S.E. 308 (1925)). According to Defendant:

[T]he killing was not particularly cruel or brutal; no effort was made to conceal the crime beforehand and the firearms appear to have been on the defendant's person prior to the killing. James Walls was shot only once. There was no obvious provocation but, in the light most favorable to the State, the facts tend to show the decision to shoot was simultaneous with the shooting. The State's evidence failed to reveal any prior planning and in examining the factors previously discussed, the State's evidence supporting premeditation and deliberation is not substantial.

We are unable, however, to agree with Defendant's assertion that "the facts tend to show the decision to shoot was simultaneous with the shooting." On the contrary, the undisputed evidence tends to show that Defendant approached Mr. Hill and Mr. Walls in a friendly manner, hugged Mr. Hill, and engaged in casual conversation with the two men. A few minutes later, Defendant scolded Mr. Walls for not paying "his boy" an additional five dollars and remarked that he "made his money off hits." After asking Mr. Hill for a cigarette, Defendant tried to return it and "slid back in the alley" before opening fire on Mr. Walls and killing him. The record contains no evidence tending to show any provocation of Defendant by Mr. Walls or the existence of any prior conflict between the two men. In addition, Defendant used the same ruse, asking for a cigarette, for the purpose of distracting both Mr. Hinton and Mr. Hill prior to shooting Mr. Hinton and Mr. Walls. The evidence concerning Defendant's behavior immediately

prior to the shooting of Mr. Walls clearly suffices to support a finding of premeditation and deliberation and does not support an inference that Defendant formed the intent to kill Mr. Walls at the same time that he shot him. As a result, this aspect of Defendant's challenge to the trial court's judgment lacks merit.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that there was no error in the proceedings leading to Defendant's convictions for first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon inflicting serious injury, and one count of possession of a firearm by a convicted felon. We also conclude, however, that the trial court erred by submitting more than one charge of possession of a firearm by a convicted felon to the jury and entering judgment against Defendant based upon those multiple convictions. As a result, we reverse two of Defendant's convictions for felonious possession of a firearm by a convicted felon and remand this case to the Lenoir County Superior Court for the entry of new judgments that are not inconsistent with this opinion.

NO ERROR IN PART, REVERSED AND REMANDED IN PART.

Judges BRYANT and STEELMAN concur.