TYSON, Judge.
 

 *599
 

 *363
 
 Adam Richard Cary ("Defendant") appeals from judgments entered upon a jury's verdict finding him guilty of one count each of possession of a weapon of mass death and destruction and impersonation of a law enforcement officer. We find no error in Defendant's conviction for impersonation of a law enforcement officer, reverse his conviction for possession of a weapon of mass death and destruction, and remand for resentencing.
 

 I.
 
 Background
 

 Defendant was operating a dark-colored Dodge Charger and pulled over a speeding vehicle on 16 July 2016. Defendant had "emergency lights" flashing on his car. State Highway Patrol Trooper Cross pulled behind Defendant's vehicle and noticed the registration plate was not consistent with or issued to a law enforcement agency. After further investigation, Defendant was arrested, and his car was searched incident to arrest. Officers found a medical technician badge, firearms, magazines, ammunition, suppressors, three diversionary flash bang grenades, and other items located inside of Defendant's car. Defendant was indicted on three counts of possession of weapons of mass destruction, impersonating a law enforcement officer, following too closely, and speeding.
 

 On 15 May 2018, the State dismissed two counts of possession of firearms as weapons of mass death and destruction, following too closely, and speeding. After trial on 18 May 2018, a jury returned verdicts finding Defendant guilty of one count of possession of a weapon of mass death and destruction and impersonation of a law enforcement officer. For the conviction of possession of a weapon of mass death and destruction charge, the court ordered Defendant to serve a term of 16 to 29 months. The court suspended the sentence and imposed intermediate punishment, ordering Defendant to serve an active term of 120 days and placing him on supervised probation for a period of 24 months. For the
 
 *364
 
 conviction on the charge of impersonating a law enforcement officer, the court ordered Defendant serve a term of 45 days. The court suspended the sentence and imposed community punishment, placing Defendant on supervised probation for a period of 24 months. Defendant gave oral notice of appeal in open court.
 

 II.
 
 Jurisdiction
 

 Jurisdiction lies in this Court from a final judgment of the superior court entered upon the jury's verdict pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2017).
 

 III.
 
 Issues
 

 Defendant argues the trial court erred by denying his motion to dismiss the weapon of mass death and destruction charge. Defendant also contends the trial court committed plain error by: (1) failing to instruct the jury on the definition of "weapon of mass death and destruction;" and (2) instructing the jury that it could find that the State satisfied the "weapon of mass death and destruction" element when the indictment did not allege that theory of guilt.
 

 IV.
 
 Impersonation of a Law Enforcement Officer
 

 Defendant appealed all of his convictions, including impersonating a law enforcement officer. On appeal, Defendant raises no arguments to challenge or show error in this conviction. Defendant's failure to bring forth arguments and authority results in abandonment of his appeal of this conviction. N.C. R. App. P. 28(a). We find no error in Defendant's conviction of impersonating a law enforcement officer.
 

 V.
 
 Standard of Review
 

 This Court reviews questions of statutory construction
 
 de novo
 
 .
 
 In re Ivey
 
 , --- N.C. App. ----, ----,
 
 810 S.E.2d 740
 
 , 744 (2018) (citation omitted).
 

 *600
 
 VI.
 
 Motion to Dismiss
 

 Defendant contends the trial court erred by denying his motion to dismiss the possession of a weapon of mass death and destruction charge for insufficient evidence. He argues possession of flash bang grenades falls outside of the category of "Grenade" listed as a "weapon of mass death and destruction" set forth in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c). We agree and reverse Defendant's conviction of possession of a weapon of mass death and destruction.
 

 *365
 

 A. "Weapon of Mass Death and Destruction"
 

 Defendant was charged with one count of possession of a weapon of mass death and destruction under N.C. Gen. Stat. 14-288.8(c). We must consider the provisions and language contained within the statute in order to determine whether or not a flash bang device would qualify as a weapon of mass death and destruction. While a "grenade" may qualify as a "weapon" under
 
 State v. Sherrod
 
 , a flash bang grenade is neither a deadly weapon nor a weapon of mass death and destruction.
 
 State v. Sherrod
 
 ,
 
 191 N.C. App. 776
 
 , 781,
 
 663 S.E.2d 470
 
 , 474 (2008) (defining weapon as "an instrument of attack or defense in combat, ... or an instrument of offensive or defensive combat[;] something to fight with[;] something (as a club, sword, gun, or grenade) used in destroying, defeating, or physically injuring an enemy" (citation omitted)). Viewing the statute holistically and narrowly, the flash bang grenades found in Defendant's car do not fit within the definition of a weapon of mass death and destruction in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c).
 

 B. Ejusdem Generis
 

 When appellate courts review and construe the meanings of words and phrases the General Assembly listed within a statute, the legislative intent is presumed to pair and restrict the meaning and application of broad and generic words to the specific context or stated purpose of the statute.
 

 "[T]he
 
 ejusdem generis
 
 rule is that where general words
 
 follow
 
 a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated."
 

 State v. Fenner
 
 ,
 
 263 N.C. 694
 
 , 697-98,
 
 140 S.E.2d 349
 
 , 352 (1965). This principle "does not warrant the court subverting or defeating the legislative will."
 
 Id.
 
 at 698,
 
 140 S.E.2d at 352
 
 .
 

 Following this canon of statutory construction, possession of a "flash bang grenade," even though called a "grenade," does not fit the definition nor qualify as the type of "Grenade" that is enumerated in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1) as a weapon of mass death and destruction. The other items included in the list, such as a "Bomb," "Rocket having a propellant charge of more than four ounces," "Missile having an explosive or incendiary charge of more than one-quarter ounce," and "Mine," comprise a set of highly deadly and destructive fragmentary and
 
 *366
 
 incendiary explosives capable of causing mass deaths and destruction. They are dissimilar to and unlike the flash bang "grenades" found inside of Defendant's car.
 

 The admitted evidence, viewed in the light most favorable to the State, shows flash bang grenades do not fall within the category of restricted items capable of producing mass death and destruction as are regulated under the statute.
 

 Id.
 

 Trooper Cross testified that to deploy a flash bang grenade, the user would "[h]old the long lever, the spoon, pull the pin out ... you would roll it into a room ... and it would make a bright flash and a very loud bang for the purpose of rendering the people-or whoever is in that room-stunned, disabled, disoriented[.]"
 

 This testimony of the effects of "a bright flash and a very loud bang" upon use is wholly inconsistent with the types and categories of egregious devices and weapons of mass death and destruction regulated or prohibited under
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1). The statute regulating weapons of mass death and destruction prohibits the unlicensed or unauthorized possession of a class of weapons of munitions of war that are capable of and can result in widespread and catastrophic deaths and destruction of property.
 

 *601
 
 The State produced no evidence that the items recovered from Defendant's vehicle were intended to be included within this statute or capable of rendering those results.
 

 "[T]he
 
 ejusdem generis
 
 rule is that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated."
 
 State v. Lee
 
 ,
 
 277 N.C. 242
 
 , 244,
 
 176 S.E.2d 772
 
 , 774 (1970). A flash bang grenade is not classified or defined even as a deadly weapon to individuals or multiple persons, as with a knife, gun, pistol, rifle, or shotgun, and does not fit into the greater and more restricted category of weapons of mass death or destruction.
 

 To be defined and included as a weapon of mass death or destruction, the item must be capable of causing catastrophic damage and consistent with the highly deadly and destructive nature of the other enumerated items in the list contained in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c).
 
 Id
 
 . The flash bang grenades found inside of Defendant's vehicle are not consistent with the purpose, do not fit within, and do not rise to the potential impacts of enumerated general items within the list as constrained by the intent and purpose of the statute.
 

 Id.
 

 The State's argument is overruled.
 

 *367
 

 C. Exclusions from the Statute
 

 N.C. Gen. Stat. § 14-288.8
 
 (c) contains the express provision that the "term 'weapon of mass death and destruction' does not include any device which is neither designed nor redesigned for use as a weapon." Defendant specifically requested a jury instruction on this exception under
 
 N.C. Gen. Stat. § 14-288.8
 
 (c), which the trial court denied.
 

 When describing how he had used flash bang grenades while serving on active military duty in Iraq, Trooper Cross stated that "we could surprise, stun and get the upper hand so we could do what we had to do quickly." Flash bang grenades were not used as a weapon of mass death or destruction, but were deployed for surprise, disorientation, and diversionary purposes, uses clearly outside of the purpose, scope, and prohibitions of the statute.
 

 It is overly simplistic and erroneous to classify a flash bang with "a bright flash and a very loud bang" or a smoke grenade emitting fog as a "Grenade" as a weapon of mass death and destruction. This inclusion would equate to classifying a cherry bomb as a "Bomb" or a bottle rocket as a "Rocket" capable of causing mass deaths.
 
 See
 

 Sherrod
 
 ,
 
 191 N.C. App. at 781
 
 ,
 
 663 S.E.2d at 474
 
 . No admitted evidence shows these flash bang devices are capable of being used as a weapon to cause mass deaths or widespread destruction.
 

 D. Rule of Lenity
 

 The rule of lenity may apply if there is ambiguity within the statute. The trial court's preemptive interpretation of
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1) is overly broad. The rule of lenity requires courts to read criminal statues narrowly and restrictively. As here, the statute's general and undefined terms could include possession of items within its provisions, which are neither dangerous nor deadly weapons, and yet be included and sanctioned as a weapon of mass death and destruction.
 

 Because of the broad, general terms included, the ambiguity in what items are included within the proscribed list in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1) compels the rule of lenity to be applicable here.
 
 See
 

 State v. Heavner
 
 ,
 
 227 N.C. App. 139
 
 , 144,
 
 741 S.E.2d 897
 
 , 901 (2013) ;
 
 State v. Crawford
 
 ,
 
 167 N.C. App. 777
 
 , 780,
 
 606 S.E.2d 375
 
 , 378 (2005) ("The rule of lenity applies only when the applicable criminal statute is ambiguous.").
 

 The rule of lenity "forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention."
 

 *368
 

 State v. Wiggins
 
 ,
 
 210 N.C. App. 128
 
 , 133,
 
 707 S.E.2d 664
 
 , 669,
 
 cert. denied
 
 ,
 
 365 N.C. 189
 
 ,
 
 707 S.E.2d 242
 
 (2011) (quotation omitted). "[W]hen applicable, the rule of lenity requires that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."
 

 *602
 

 Heavner
 
 ,
 
 227 N.C. App. at 144
 
 ,
 
 741 S.E.2d at 901-02
 
 (quotation and citation omitted).
 

 Based upon the application of the rule of lenity to the intent and types of weapons proscribed by the statute, Defendant's motion to dismiss the charge of possession of a weapon of mass death and destruction should have been granted. The flash bang grenades found in Defendant's car were not devices or weapons or "Grenades" capable of causing mass death and destruction when construing
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1) narrowly under the rule of lenity.
 

 Id.
 

 VII.
 
 Plain Error in the Jury Instructions
 

 Defendant also asserts the trial court committed plain error both by failing to instruct the jury on the definition of weapon of mass death or destruction and by preemptively instructing the jury that the State had satisfied the possession of a weapon of mass death and destruction element, if it found that Mr. Carey had possessed a "grenade" where the indictment did not allege that theory of guilt. Since we reverse Defendant's conviction for possession of a weapon of mass death and destruction because the trial court should have granted Defendant's motion to dismiss for the reasons analyzed above, we do not address Defendant's arguments challenging the jury instructions regarding these issues.
 

 VIII.
 
 Conclusion
 

 Defendant's failure to bring forth arguments and authority results in abandonment of the appeal of his conviction for impersonating a law enforcement officer. N. C. R. App. P. Rule 28(a). We find no error in that conviction.
 

 The trial court erred by failing to grant Defendant's motion to dismiss. The flash bang grenades found in the back of Defendant's vehicle do not satisfy the requirements for possession of a "Grenade" that is a "weapon of mass death and destruction" as is set out by
 
 N.C. Gen. Stat. § 14-288.8
 
 (c). These items are not "of the same kind, character and nature as those [weapons] specifically enumerated by the statute."
 
 Fenner
 
 , at 697-98,
 
 140 S.E.2d at 352
 
 .
 

 The trial court increased the potential penalty on Defendant by construing the scope of the statute's undefined and general words ambiguously, beyond the General Assembly's intention, and inconsistent with
 
 *369
 
 the well-established canons of statutory construction.
 
 See
 

 Wiggins
 
 ,
 
 210 N.C. App. at 133
 
 , 707 S.E.2d at 669.
 

 The State failed to present sufficient evidence under N.C. Gen. Stat. 14-288.8(c) to support a conclusion or verdict that possession of the flash bang grenades found in Defendant's car were a "Grenade" proscribed as a weapon of mass death and destruction. Defendant's motion to dismiss is properly allowed.
 

 We reverse the trial court's decision and remand for resentencing. This decision does not prevent nor prohibit the possession or use of flash bang grenades from being otherwise restricted or regulated by law.
 
 It is so ordered.
 

 NO ERROR IN PART; REVERSED IN PART; AND REMANDED.
 

 Judge MURPHY concurs.
 

 Judge YOUNG concurs in part and dissents in part with separate opinion.
 

 YOUNG, Judge, dissenting in part and concurring in part.
 

 I.
 
 Introduction
 

 The majority has held that flash bang grenades are not weapons of mass death and destruction under
 
 N.C. Gen. Stat. § 14-288.8
 
 (c) (2017). Accordingly, the majority held that the trial court erred by denying Defendant's motion to dismiss the charge of possession of a weapon of mass death and destruction for insufficient evidence and reversed the conviction. Because I disagree with the underlying principle, I must respectfully dissent.
 

 The majority held that a "flash bang grenade," even though called a "grenade," does not fit the definition nor qualify as the type of "Grenade" that is enumerated in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1). Following the canons of statutory construction, the plain language of the statute should control.
 
 State v. Jamison
 
 ,
 
 234 N.C. App. 231
 
 , 238,
 
 758 S.E.2d 666
 
 , 671 (2014).
 

 *603
 
 The intent of the Legislature controls the interpretation of a statute. When a statute is unambiguous, the court will give effect to the plain meaning of the words without resorting to judicial construction. Courts must give an unambiguous statute its plain and definite meaning, and
 
 *370
 
 are without power to interpolate, or superimpose, provisions and limitations not contained therein.
 

 Id.
 
 at 238,
 
 758 S.E.2d at 671
 
 .
 

 II.
 
 Motion to Dismiss
 

 "[T]o obtain a conviction for possession of a weapon of mass death and destruction, the State must prove two elements beyond a reasonable doubt: (1) that the weapon is a weapon of mass death and destruction and (2) that defendant knowingly possessed the weapon."
 
 State v. Billinger
 
 ,
 
 213 N.C. App. 249
 
 , 253,
 
 714 S.E.2d 201
 
 , 205 (2011). Defendant only challenges element one. By statute, "the term 'weapon of mass death and destruction' includes: Any explosive or incendiary: (a) Bomb; or (b) Grenade; or ... (f) Device similar to any of the devices described above."
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1).
 

 Defendant contends that the grenades in his possession are excluded from the definition of weapons of mass death and destruction. However, the statute does not support his argument.
 

 The term "weapon of mass death and destruction" does not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line-throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of Title 10 of the United States; or any other device which the Secretary of the Treasury finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting purposes, in accordance with Chapter 44 of Title 18 of the United States Code.
 

 N.C. Gen. Stat. § 14-288.8
 
 (c).
 

 In
 
 Sherrod
 
 , this Court held "an instrument of attack or defense in combat, ... or an instrument of offensive or defensive combat[;] something to fight with[;] something (as a club, sword, gun, or grenade) used in destroying, defeating, or physically injuring an enemy" is a weapon.
 
 State v. Sherrod
 
 ,
 
 191 N.C. App. 776
 
 , 781,
 
 663 S.E.2d 470
 
 , 474 (2008). In the present case, the weapon at issue is a grenade. Diversionary grenades are military-issued ordnance which are used in combat. Furthermore, in the present case, the words: "GRENADE, HAND, DIVERSIONARY" and "IF FOUND DO NOT HANDLE NOTIFY POLICE OR MILITARY,"
 

 *371
 
 were printed on the labels of the grenades found in Defendant's vehicle. Trooper Christopher Cross, who served in the military for sixteen years and used a flash bang grenade, testified that flash bang grenades "have the ability to cause serious injury, such as loss of limbs, burns, and things like that."
 

 The flash bang grenade at issue was designed to be used in combat as a weapon. Moreover, the flash bang grenade was not "redesigned for use as a signaling, pyrotechnic, line-throwing, safety, or similar device." Lastly, there is no evidence to show that the flash bang grenade was "surplus ordnance sold, loaned, or given by the Secretary of the Army," nor was it an "antique" or used solely for "sporting purposes." As such, the flash bang grenade is not excluded from being a weapon of mass death and destruction as enumerated in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c).
 

 Pursuant to the plain language of the statute, a "flash bang grenade" is, by law, a "grenade," and therefore a weapon of mass death and destruction. Furthermore, a "flash bang grenade" does not fall within an exclusion enumerated in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c). There was sufficient evidence to support a finding that Defendant possessed a weapon of mass death and destruction.
 

 III.
 
 Failure to Provide Definition
 

 Defendant alleges the trial court committed plain error by failing to instruct the jury
 
 *604
 
 on the definition of a "weapon of mass death or destruction" as provided in
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1). Although the majority declined to address this issue, I believe it is properly before us. Defendant raised no objection at trial, and we therefore review for plain error.
 

 Plain error arises when the error is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' "
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (quoting
 
 United States v. McCaskill
 
 ,
 
 676 F.2d 995
 
 , 1002 (4th Cir. 1982),
 
 cert. denied
 
 ,
 
 459 U.S. 1018
 
 ,
 
 103 S.Ct. 381
 
 ,
 
 74 L. Ed. 2d. 513
 
 (1982) ). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993).
 

 As in Defendant's first argument, this Court established in
 
 Sherrod
 
 that a grenade is a weapon "used in destroying, defeating, or physically injuring an enemy."
 
 Sherrod
 
 ,
 
 191 N.C. App. at 781
 
 ,
 
 663 S.E.2d at 474
 
 . In addition, the applicable statute defines a grenade as a "weapon of mass death and destruction," so there was no need for a definition to be provided.
 
 N.C. Gen. Stat. § 14-288.8
 
 (c)(1).
 

 *372
 
 Even if it were error for the trial court to decline to instruct the jury on the definition of a "weapon of mass death or destruction," it would not rise to the level of prejudice to Defendant. The definition specifically includes grenades, and thus, the jury would probably have reached the same result. Therefore, I would find no plain error.
 

 IV.
 
 Element not in Indictment
 

 Defendant contends the trial court committed plain error by instructing the jury that it could find that the State satisfied the "weapon of mass death or destruction" element if it found that Defendant possessed a "grenade" where the indictment did not allege that theory of guilt. As above, although the majority declined to address this issue, I believe it is properly before us. Because this issue was not preserved by objection at trial we review for plain error.
 

 The indictment alleged Defendant "did possess a weapon of mass death and destruction, three flash bang grenades." Defendant complained that the description of the grenade was too specific. A flash bang grenade was presented at trial even though it was only referred to as a "grenade."
 

 In
 
 Bollinger
 
 , the defendant was indicted for carrying a concealed weapon. The indictment stated that the defendant "unlawfully and willfully did carry a concealed deadly weapon while off his premises, to wit:
 
 a Metallic set of Knuckles
 
 ."
 
 State v. Bollinger
 
 ,
 
 192 N.C. App. 241
 
 , 243,
 
 665 S.E.2d 136
 
 , 138 (2008) (emphasis in original). The trial court instructed the jury that "it could find defendant guilty only upon a finding that defendant 'intentionally carried and concealed about his person
 
 one or more knives
 
 ."
 
 Id
 
 . at 244,
 
 665 S.E.2d at 138
 
 (emphasis in original). As in the instant case, the defendant argued that there was a fatal variance between the offense charged in the indictment and the evidence presented, and instructions given, at trial. This Court held that "an indictment is sufficient if it charges the substance of the offense, puts the defendant on notice of the crime, and alleges all essential elements of the crime."
 
 Id
 
 . at 246,
 
 665 S.E.2d at 139
 
 . In
 
 Bollinger
 
 , the additional language, "to wit:
 
 a Metallic set of Knuckles
 
 " was deemed "mere surplusage and not an essential element of the crime of carrying a concealed weapon."
 
 Id
 
 . at 246,
 
 665 S.E.2d at 139-140
 
 .
 

 Similarly, in this case, it was unnecessary to say, "three flash bang grenades" instead of "grenades." It is clear that the offense is possession of a weapon of mass death and destruction. As a result, the indictment did allege that theory of guilt. However, even if it did not, the jury
 
 *373
 
 would probably not have reached a different result in the absence of this instruction, and therefore, I would find no plain error.
 

 V.
 
 Impersonating a Law Enforcement Officer
 

 I agree with the majority that Defendant's failure to bring forth arguments and authority results in abandonment of his appeal of this conviction. N.C.R. App. P. Rule 28(a).
 

 *605
 
 VI.
 
 Conclusion
 

 With regard to impersonating a law enforcement officer, I concur with the majority that Defendant's argument is abandoned on appeal. However, with regard to the weapon of mass death and destruction, I respectfully dissent, and this Court should uphold the lower court's decision.