IN THE SUPREME COURT OF NORTH CAROLINA

No. 293A19

Filed 28 February 2020

STATE OF NORTH CAROLINA

v.

ADAM RICHARD CAREY

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 831 S.E.2d 597 (N.C. Ct. App. 2019), finding no error, in part, and reversing, in part, judgments entered on 18 May 2018 by Judge Leonard L. Wiggins in Superior Court, Onslow County, and remanding for resentencing. Heard in the Supreme Court on 8 January 2020.

*Joshua H. Stein, Attorney General, by E. Burke Haywood, Special Deputy Attorney General, for the State-appellant.*

*Guy J. Loranger for defendant-appellee.*

ERVIN, Justice.

This case presents the question of whether a "flash bang" grenade is a weapon of mass death and destruction as defined in N.C.G.S. § 14-288.8(c)(1). After carefully considering the record, transcripts, briefs, and arguments of the parties, we conclude that such a grenade is a weapon of mass death and destruction and that the Court of Appeals erred by making a contrary determination. As a result, we reverse the

decision of the Court of Appeals and remand this case to that court for consideration of defendant's remaining challenges to the trial court's judgments.

At around 2:20 a.m. on 16 July 2016, Trooper Christopher Cross of the North Carolina State Highway Patrol noticed two vehicles traveling in close proximity to each other at a rate of speed that appeared to exceed the applicable speed limit on Highway 258 between Richlands and Jacksonville. After measuring the vehicles' speed at sixty-eight miles per hour, Trooper Cross decided to initiate a traffic stop.

As he approached the speeding vehicles, Trooper Cross observed that both of the vehicles had slowed down and moved over to the right shoulder of the highway. After activating his emergency lights, Trooper Cross saw lights on the rear deck of one of the vehicles that appeared to flash blue. Assuming that he had encountered another law enforcement officer, Trooper Cross pulled up beside the vehicle, which was a Dodge Charger, and asked the occupant, who turned out to be defendant Adam Richard Carey, what was going on. In response, defendant stated that he had pulled over the other vehicle because the driver was speeding and had been driving left of the center line.

Upon nearing defendant's vehicle, Trooper Cross noticed that, like unmarked State Highway Patrol vehicles, the Dodge Charger had a "regular North Carolina First in Flight tag on it." However, unlike unmarked State Highway Patrol vehicles, the license plate on the Dodge Charger was not stamped "SHP." At that point, Trooper Cross asked defendant which agency he was employed by and was told that

defendant was a member of Duplin County Search and Rescue. After speaking to the driver of the other vehicle and allowing him to proceed on his way, Trooper Cross returned to the Dodge Charger for the purpose of having a further discussion with defendant.

In the course of the ensuing conversation, defendant denied that the lights on his vehicle were blue. As a result, Trooper Cross directed defendant to move his vehicle to a side road while he reviewed the video generated by his dashboard camera to confirm the color of the lights on the Dodge Charger. Although the dashboard camera video appeared to show that the lights were blue, Trooper Cross concluded that condensation on his windshield had caused this result. When Trooper Cross had defendant activate the lights in his vehicle, they flashed "clear and red."

After arresting defendant for impersonating a law enforcement officer, Trooper Cross, assisted by his partner, began searching defendant's vehicle incident to arrest. During the ensuing search, Trooper Cross discovered, among other items, an emergency medical technician's badge; a number of firearms, including several handguns and rifles with suppressors; three diversionary or "flash bang" grenades; firearm magazines and ammunition; handcuffs; knives; and body armor.

On 9 May 2017, the Onslow County grand jury returned a bill of indictment charging defendant with two counts of possession of a weapon of mass death and destruction arising from defendant's possession of a silenced long rifle and a silenced pistol; one count of possession of a weapon of mass death and destruction arising from

defendant's possession of three "flash bang" grenades; one count of impersonating a law enforcement officer; one count of following too closely; and one count of speeding in excess of thirty-five miles per hour while within the corporate limits of a municipality. On 15 May 2018, the State voluntarily dismissed the charges of possession of a weapon of mass death and destruction stemming from defendant's possession of a silenced long rifle and a silenced pistol, the charge of following too closely, and the charge of speeding.

The charges that had been lodged against defendant came on for trial before the trial court and a jury at the 14 May 2018 criminal session of the Superior Court, Onslow County. At the conclusion of the State's evidence, defendant unsuccessfully moved to dismiss the remaining possession of a weapon of mass death and destruction charge, which stemmed from defendant's possession of the "flash bang" grenades, and the impersonating a law enforcement officer charge for insufficiency of the evidence. In addition, defendant unsuccessfully renewed his dismissal motions at the close of all the evidence. On 18 May 2018, the jury returned a verdict convicting defendant of possessing a weapon of mass death and destruction and impersonating a law enforcement officer. After accepting the jury's verdict, the trial court entered a judgment sentencing defendant to a term of sixteen to twenty-nine months imprisonment based upon his conviction for possession of a weapon of mass death and destruction, suspending that active sentence, and placing defendant on supervised probation for a period of twenty-four months on the condition that he serve

an active term of 120 days imprisonment, perform forty-eight hours of community service, obtain a mental health assessment and comply with any treatment recommendations, not possess any non-standard light systems, not possess on his person any item suggesting an association with a law enforcement agency, surrender any firearms in his possession, and comply with the usual terms and conditions of probation. In addition, the trial court entered a second judgment based upon defendant's conviction for impersonating a law enforcement officer sentencing defendant to a consecutive term of forty-five days imprisonment, suspending that sentence, and placing defendant on supervised probation for a consecutive period of twenty-four months on the condition that defendant comply with the usual terms and conditions of probation. Defendant noted an appeal to the Court of Appeals from the trial court's judgments.

In seeking relief from the trial court's judgments before the Court of Appeals, defendant argued that the trial court had erred by denying his motion to dismiss the charge of possession of a weapon of mass death and destruction on the grounds that the State had failed to elicit sufficient evidence to establish that the three "flash bang" grenades that he had possessed constituted weapons of mass death and destruction as defined in N.C.G.S. § 14-288.8(c)(1); that the trial court had committed plain error by failing to instruct the jury in such a manner as to properly define a weapon of mass death and destruction; and that the trial court had committed plain error by instructing the jury that it could convict defendant of possession of a weapon of mass

death and destruction on the basis of a theory that had not been alleged in the relevant count of the indictment that had been returned against defendant.

On 16 July 2019, the Court of Appeals filed an opinion finding no error, in part; reversing the trial court's judgments, in part; and remanding this case to the Superior Court, Onslow County, for resentencing. *State v. Carey*, 831 S.E.2d 597 (N.C. Ct. App. 2019). After concluding that defendant had abandoned his challenge to his conviction for impersonating a law enforcement officer, *id.* at 599 (citing N.C.R. App. P. 28(a)), the majority at the Court of Appeals held that the trial court had erred by denying defendant's motion to dismiss the possession of a weapon of mass death and destruction charge for insufficiency of the evidence because "[t]he flash bang grenades found in [d]efendant's car were not devices or weapons or 'Grenades' capable of causing mass death and destruction when construing N.C.[G.S.] § 14-288.8(c)(1)." *Id.* at 602. In reaching this conclusion, the majority reasoned that, in light of the *ejusdem generis* canon of statutory construction, which provides that, "where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated," *id.* at 601 (quoting *State v. Lee*, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970)), the fact that "grenade" appeared in N.C.G.S. § 14-288.8(c)(1) under the general definition of a "weapon of mass death and destruction" means that any grenade subject to the relevant statutory prohibition "must be

capable of causing catastrophic damage and consistent with the highly deadly and destructive nature of the other enumerated items in the list." *Id.* In view of the fact that the "flash bang" grenades that defendant was convicted of possessing were "not consistent with the purpose, do not fit within, and do not rise" to the level of harmfulness associated with the other items included within the definition of a weapon of mass death and destruction, the possession of "flash bang" grenades was not prohibited by N.C.G.S. § 14-288.8(c)(1). *Id.* The majority at the Court of Appeals also concluded that the result that it deemed appropriate was required by the rule of lenity given that the "general and undefined term[ ] [contained in N.C.G.S. § 14-288.8(c)(1)] could include possession of items within its provisions, which are neither dangerous nor deadly weapons, and yet be included and sanctioned as a weapon of mass death and destruction." *Id.* (stating that "[t]he rule of lenity requires courts to read criminal statu[t]es narrowly and restrictively")). In light of its determination that the trial court had erred by denying defendant's dismissal motion, the majority at the Court of Appeals refrained from addressing defendant's remaining challenges to the trial court's judgments. *Id.* at 602. Judge Young dissented from the majority's determination that the trial court had erred by denying defendant's dismissal motion on the grounds that, "[p]ursuant to the plain language of the statute, a 'flash bang grenade' is, by law, a 'grenade,' and therefore a weapon of mass death and destruction." *Id.* at 603 (Young, J., dissenting).

In seeking to persuade this Court to overturn the Court of Appeals' decision, the State contends that "flash-bang grenades are weapons of mass death and destruction . . . because the General Assembly has defined them as such." The State urges us to adopt this conclusion on the grounds that N.C.G.S. § 14-288.8(c)(1) "provides that a 'weapon of mass death and destruction' includes *any* explosive or incendiary grenade." The State asserts that the statutory language contained in N.C.G.S. § 14-288.8(c)(1) is unambiguous and that the Court of Appeals erred by treating the statutory language as ambiguous and utilizing various rules of statutory construction to interpret it.

Defendant, on the other hand, contends that "N.C.[G.S.] § 14-288.8(c)(1) is ambiguous where it lists 'grenade' as a type of explosive or incendiary device that is banned as a weapon of mass death and destruction." According to defendant, the evidence elicited by the State at trial established that there are many different types of grenades, so that "the Court of Appeals made no error of law by turning to rules of statutory construction . . . in order to determine whether . . . the flash bang grenades found in [defendant's] car fell within the definition of a weapon of mass death and destruction under N.C.[G.S.] § 14-288.8(c)(1)." In defendant's view, "the State's evidence established that a flash bang grenade is not, in and of itself, a weapon capable of causing mass death and destruction" in light of the fact that its intended purpose is "to merely stun, disable or disorient others." Defendant asserts that, in the event that a "flash bang" grenade is used for its intended purpose, it is "unlike

the other deadly and destructive devices listed in N.C.[G.S.] § 14-288.8(c)(1)" and clearly falls outside the scope of the relevant statutory prohibition.

The first step that must be undertaken in construing any statutory provision is to examine the language in which that provision is couched. *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) (citing *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). According to well-established North Carolina law, "[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Jackson*, 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001) (quoting *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388–89 (1978)). On the other hand, when the words of a statute are unclear or ambiguous, "courts must resort to statutory construction to determine legislative will and the evil the legislature intended the statute to suppress." *Id.* (citing *In re Banks*, 295 N.C. at 239, 244 S.E.2d at 389)).

Section 14-288.8 of the North Carolina General Statutes makes "it . . . unlawful for any person to manufacture, assemble, possess, store, transport, sell, offer to sell, purchase, offer to purchase, deliver or give to another, or acquire any weapon of mass death and destruction." N.C.G.S. § 14-288.8(a) (2019).

> The term "weapon of mass death and destruction" includes:
> (1) *Any explosive or incendiary*:
>     a.    Bomb; or

> b. *Grenade*; or
> c. Rocket having a propellant charge of more than four ounces; or
> d. Missile having an explosive or incendiary charge of more than one-quarter ounce; or
> e. Mine; or
> f. Device similar to any of the devices described above . . .
>
> . . . .
>
> The term "weapon of mass death and destruction" does not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line-throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of Title 10 of the United States Code; or any other device which the Secretary of the Treasury finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting purposes, in accordance with Chapter 44 of Title 18 of the United States Code.

*Id.* § 14-288.8(c) (emphasis added). Although the definition of a "weapon of mass death and destruction" provided by the General Assembly consists of a list delineating a variety of weapons, only one of the weapons contained in that list is relevant to the resolution of the issue that is before us in this case.

The statutory definition contained in N.C.G.S. § 14-288.8(c)(1) explicitly provides that "[a]ny explosive or incendiary . . . [g]renade" is a weapon of mass death and destruction for purposes of the prohibition set out in N.C.G.S. § 14-288.8(a). *Id.* § 14-288.8(c)(1). As should be obvious from an examination of the plain meaning of

the relevant statutory language, the General Assembly did not differentiate between different types of grenades and, instead, simply prohibited the possession of "*[a]ny* explosive or incendiary . . . [g]renade." *Id.* (emphasis added). Contrary to the reasoning employed by the majority of the Court of Appeals, nothing in the relevant statutory language suggests that the General Assembly intended to require the existence of a causal link between the use of a weapon explicitly listed in N.C.G.S. § 14-288.8(c)(1) and the ability of that weapon, as a matter of fact, to cause mass death and destruction. By focusing upon the extent to which "flash bang" grenades "are capable of and can result in widespread and catastrophic deaths and destruction of property," *Carey*, 831 S.E.2d at 600–01, the majority at the Court of Appeals injected into its analysis the kind of "judicial construction" that our precedent cautions against in cases involving clear and unambiguous statutory language. *Jackson*, 353 N.C. at 501, 546 S.E.2d at 574 (quoting *In re Banks*, 295 N.C. at 239, 244 S.E.2d at 388–89). Simply put, instead of requiring trial courts to engage in a fact-intensive examination of the extent to which any particular weapon is capable of causing mass death and destruction, the General Assembly provided a straightforward list of weapons that it thought that the people of North Carolina should be prohibited from possessing which includes any "explosive or incendiary" grenade. As a result, we hold that any "explosive or incendiary" grenade is a weapon of mass death and destruction for purposes of the prohibition set out in N.C.G.S. § 14-288.8(a).

Having concluded that any "explosive or incendiary" grenade is a weapon of mass death and destruction as that term is defined in N.C.G.S. § 14-288.8(c)(1), we must next decide whether the State presented "substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Campbell*, 835 S.E.2d 844, 848 (N.C. 2019) (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) (quoting *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990)). In view of the fact that defendant has never contested the validity of the State's contention that he actually possessed the "flash bang" grenades that are at issue in this case, the only remaining question for our consideration is whether the State's evidence establishes that the items that defendant admittedly possessed were "explosive or incendiary" grenades.

The evidence elicited by the State at trial tended to show that the items found in defendant's trunk bore a written label that stated "GRENADE, HAND, DIVERSIONARY" and "IF FOUND DO NOT HANDLE NOTIFY POLICE OR MILITARY." Trooper Cross, who had previously served in the military and taught at the School of Infantry, testified that he was familiar with "flash bang" grenades, that they were used in combat, and that such grenades, when thrown, would explode and "make a bright flash and a very loud bang, for the purpose of rendering the people— or whoever is in that room—stunned, disabled, [and] disoriented." As a result, we

have no hesitation in holding that the State presented substantial evidence tending to show that defendant possessed an "explosive or incendiary" grenade in violation of N.C.G.S. § 14-288.8(a). For that reason, we reverse the Court of Appeals' decision to the contrary and remand this case to the Court of Appeals for consideration of defendant's remaining challenges to the trial court's judgments.

REVERSED AND REMANDED.